UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
CVD EQUIPMENT CORPORATION,                   :
:
                              Plaintiff,    :    10 CV 0573 (RJH) (RLE)
:
          -against-                                  :
:
TAIWAN GLASS INDUSTRIAL                      :
CORPORATION and MIZUHO CORPORATE             :
BANK, LTD.,                                  :
:
                            Defendants.   :
------------------------------------------------------------x

## TAIWAN GLASS INDUSTRIAL CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO CVD EQUIPMENT CORPORATION'S CROSS MOTION FOR SUMMARY JUDGMENT

ALLEGAERT BERGER & VOGEL LLP
111 Broadway, 20th Floor
New York, New York 10006
(212) 571-0550

*Attorneys for Defendant-Counterclaimant
Taiwan Glass Industrial Corporation*

Page(s)

## Table of Contents

Table of Authorities ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ................................................................................................................. 3

I.  As Relevant Here, Article 20(a)(ii) of the UCP Requires a Bill of Lading Containing Pre-Printed Wording that the Goods Were Shipped on Board a Vessel ................................................................................................................ 3

II. The Pre-Printed Wording in the Bill of Lading Is Insufficient to Satisfy the "Shipped on Board" Requirement of Article 20(a)(ii) of the UCP .................. 5

III. The Importance of the "Shipped on Board" Requirement ............................... 8

CONCLUSION ............................................................................................................ 11

Page(s)

# Table of Authorities

Cases

Alaska Textile Co. v. Chase Manhattan Bank, N.A.,
982 F.2d 813 (2d Cir. 1992) ................................................................................8

Blonder & Co. v. Citibank, N.A.,
28 A.D.3d 180, 808 N.Y.S.2d 214 (1st Dep't 2006) ..........................................4

Robalen, Inc. v. Generale De Banque S.A.,
No. 97 Civ. 0887, 1999 WL 688301 (S.D.N.Y. Sept. 3, 1999) .......................6, 7

Western Int'l Forest Products, Inc. v. Shinhan Bank,
860 F. Supp. 151 (S.D.N.Y. 1994) ......................................................................4

Other

ICC Banking Commission Opinions, 1997, R284 ...................................................6

ICC Banking Commission Opinions, 1998/99, R347 ..............................................6

ICC Banking Commission Opinions, 1998/99, R349 ..............................................6

ICC Banking Commission Opinions, 2000/01, R455 ..............................................6

ICC Banking Commission Opinions, 2005-2008, R638 / TA629 ............................4

ICC International Standard Banking Practice Publication 681 ................................7

UCP 500, Article 23(a)(ii) ........................................................................................6

UCP 600, Article 20(a)(ii) ................................................................................passim

Defendant Counterclaimant Taiwan Glass Industrial Corporation ("Taiwan Glass) respectfully submits this Memorandum of Law in opposition to Plaintiff CVD Equipment Corporation's ("CVD") cross motion for summary judgment against defendant Mizuho Corporate Bank, Ltd. ("Mizuho").

## PRELIMINARY STATEMENT

In 2008, CVD and Taiwan Glass entered into a contract for the sale of goods (the "Contract"). Pursuant to the Contract, two letters of credit were issued. The first letter of credit was issued by Mizuho (at the request of Taiwan Glass) in favor of CVD, for payment of the goods under the Contract (the "Taiwan Glass L/C").[1] The second letter of credit was a standby letter of credit issued by Capital One Bank, N.A. ("Capital One") (at the request of CVD) in favor of Taiwan Glass, pursuant to which Taiwan Glass was entitled to recover its $3,564,000 down payment if CVD defaulted in its performance of the Contract (the "CVD L/C").[2] Mizuho's motion for summary judgment against CVD, and CVD's cross motion for summary judgment against Mizuho, both concern whether CVD is entitled to payment under the Taiwan Glass L/C (the "Motions"). One of the legal issues in dispute in the Motions is whether the bill of lading dated November 27, 2009 (the "Bill of Lading"), presented by CVD to Mizuho as part of a package of documents purportedly justifying payment under the Taiwan Glass L/C, is proper under applicable law and rules.[3]

That very same issue – whether the Bill of Lading is proper – is also one of the main legal issues in Taiwan Glass's claim against Capital One. In its Amended Answer and

---

[1] The Taiwan Glass L/C is attached as Exhibits A and B to the Declaration of Ruby Huang in Support of Mizuho Corporate Bank, Ltd's Motion for Summary Judgment, dated July 26, 2010 (the "Huang Decl.").

[2] A true and correct copy of the CVD L/C is attached as Exhibit 1 to the Declaration of Howard Chen, dated September 30, 2010, submitted herewith (the "Chen Decl.").

[3] A true and correct copy of the Bill of Lading is attached as Exhibit 2 to the Chen Decl.

Counterclaim, Taiwan Glass asserts a claim of wrongful dishonor of the CVD L/C against Capital One, based on Capital One's wrongful refusal to honor the CVD L/C despite Taiwan Glass's timely presentation of complying documents under the CVD L/C. As the reason for its refusal, Capital One claimed that the CVD L/C had been cancelled pursuant to CVD's presentation of the Bill of Lading.[4] Therefore, as the applicant of the Taiwan Glass L/C, and as a beneficiary of the CVD L/C (and a claimant against Capital One thereunder), Taiwan Glass has an interest in the outcome of the Motions, and in particular in the determination of whether the Bill of Lading is proper. Taiwan Glass respectfully submits that the Bill of Lading is improper under applicable law and rules.

The legal question at issue here is a narrow one, because it involves the meaning, and application, of one subsection of the Uniform Customs and Practice for Documentary Credits, 2007 Revision, ICC Publication No. 600 (the "UCP"), dealing with bills of lading, namely, Article 20(a)(ii).[5] All the parties herein agree that UCP Article 20(a)(ii) requires a bill of lading to contain information indicating that the goods have been shipped or loaded on board a vessel, and that such information may be shown by one of two methods: (1) pre-printed wording to the effect that the goods have been shipped on board a vessel; or (2) an "on board notation" indicating the date on which the goods were shipped on board a vessel. CVD, moreover, concedes that the Bill of Lading does not contain any on board notation. Therefore, as a matter of law, the Bill of Lading cannot satisfy Article 20(a)(ii) unless the pre-printed wording in the

---

[4] Under its terms, the CVD L/C may be cancelled upon the presentation of a "copy of an original bill of lading submitted by CVD Equipment Corporation issued to the order of [Taiwan Glass] . . . dated not later than November 30, 2009 and indicating CVD Equipment Corporation as shipper". See Exhibit 1 to the Chen Decl.

[5] Both CVD and Mizuho agree that, since the Taiwan Glass L/C expressly incorporates the UCP as the governing rules, the UCP governs their dispute. See CVD's Memorandum of Law ("CVD Mem."), pp. 1-2; Mizuho's Memorandum of Law in Support of its Motion for Summary Judgment ("Mizuho Mem."), pp. 9-10. The CVD L/C similarly provides the UCP as the governing rules.

2

Bill of Lading is sufficient to satisfy the "shipped on board" requirement of that Article. As shown below, because the Bill of Lading's pre-printed wording states only that the goods have been "received" by the carrier, instead of containing words to the effect that the goods have been "shipped" or "loaded" on board a vessel, the Bill of Lading is insufficient to satisfy the "shipped on board" requirement.

The "shipped on board" requirement is of critical importance because it relates to the determination of the shipment date of the goods. In effect, under Article 20(a)(ii) of the UCP, the "shipped on board" date is deemed to be the shipment date. In this case, the Taiwan Glass L/C requires CVD to ship the goods on or before November 30, 2009, but (as shown below) the goods were not shipped on board until December 5, 2009. The Bill of Lading, because it fails to satisfy the "shipped on board" requirement, conceals the fact that CVD shipped the goods on December 5, 2009, five days after the November 30, 2009 deadline. CVD, therefore, should not be allowed to rely on the improper Bill of Lading to claim payment under the Taiwan Glass L/C, or to cancel the CVD L/C.

## ARGUMENT

I.  **As Relevant Here, Article 20(a)(ii) of the UCP Requires a Bill of Lading Containing Pre-Printed Wording that the Goods Were Shipped on Board a Vessel.**

Article 20(a)(ii)[6] of the UCP provides, in part: "A bill of lading, however named, must appear to . . . indicate that the goods have been shipped on board a named vessel at the port of loading stated in the credit by . . . pre-printed wording, or . . . an on board notation indicating the date on which the goods have been shipped on board".[7] As such, a bill of lading is required

---

[6] The parties herein agree that Article 20(a)(ii) is the applicable provision governing the propriety of the Bill of Lading.

[7] Article 20 of the UCP is attached as Exhibit 3 to the Chen Decl.

3

to contain information to the effect that the goods have been "shipped on board" a vessel. That information may be shown on the bill of lading in one of two ways: (1) by pre-printed wording; or (2) by an on board notation. See Blonder & Co. v. Citibank, N.A., 28 A.D.3d 180, 185, 808 N.Y.S.2d 214 (1st Dep't 2006) ("loading on board may be indicated . . . by pre-printed wording on the bill of lading or by a notation of the date on which the goods have been loaded on board"); see also Official Opinions of the International Chamber of Commerce ("ICC") Banking Commission, 2005-2008, R638 / TA629 ("a bill of lading subject to UCP 600 article 20 . . . would also need to evidence that the goods had been shipped on board a named vessel, by pre-printed wording to that effect or an on board notation indicating the date on which the goods had been shipped on board").[8] Significantly, although CVD does not explicitly say so in its Memorandum, it does not dispute this interpretation of Article 20(a)(ii).

Indeed, by arguing that the pre-printed wording in the Bill of Lading "satisfies the 'shipped on board' requirement", CVD Mem., p. 9, CVD necessarily admits, as it must, that there is a "shipped on board" requirement for the Bill of Lading. Similarly, by arguing that the pre-printed wording in the Bill of Lading satisfies the "shipped on board" requirement and that no "on board notation" was required, CVD necessarily admits that the "shipped on board requirement" is satisfied by either pre-printed wording or an on board notation. See id., p. 8 ("Capital One (as the nominated bank) apparently recognized the fact that no specific 'on board notation' was required, when it found the documents presented to be compliant, and forwarded

---

[8] The Official Opinions of the ICC Banking Commission, 2005-2008, R638 / TA629, is attached as Exhibit 4 to the Chen Decl. The opinions of the ICC Banking Commission "aim to encourage uniformity of practice" and to "serve as guideposts to courts in interpreting [the UCP]". See id., Foreword to ICC Opinions, 2005-2008. The ICC Banking Commission Opinions, while not law, "are entitled to some persuasive weight in interpreting the UCP". Western Int'l Forest Products, Inc. v. Shinhan Bank, 860 F. Supp. 151, 154 (S.D.N.Y. 1994).

4

them to Mizuho for payment"); p. 9 (the pre-printed wording in the Bill of Lading "satisfies the 'shipped on board' requirement").

CVD, furthermore, concedes -- as it must -- that the Bill of Lading does *not* contain an on board notation. See id., p. 8 ("Capital One (as the nominated bank) apparently recognized the fact that no specific 'on board notation' was required, when it found the documents presented to be compliant, and forwarded them to Mizuho for payment"). Therefore, the only way that the Bill of Lading can satisfy the "shipped on board" requirement of Article 20(a)(ii) is if it contains "pre-printed wording" to the effect that the goods had been shipped on board a vessel.

## II. The Pre-Printed Wording in the Bill of Lading Is Insufficient to Satisfy the "Shipped on Board" Requirement of Article 20(a)(ii) of the UCP.

CVD argues that the following pre-printed wording in the Bill of Lading satisfies the "shipped on board" requirement of Article 20(a)(ii):

> Received by the Carrier in apparent good order and condition unless otherwise indicated hereon the Container(s) and/or goods hereinafter mentioned to be transported and/or otherwise forwarded from the Place of Receipt to the Intended Place of Delivery . . . .

CVD Mem., pp. 8-9. This wording, however, clearly does not state that the goods had been shipped on board a vessel, and CVD does not cite any apposite authority for its view that this wording satisfies the UCP's requirement that the Bill of Lading indicate the goods have been "shipped on board a named vessel at the port of loading stated in the credit". To the contrary, it is well-established, as a matter of law and of banking practice, that the kind of pre-printed wording in this Bill of Lading does *not* satisfy the "shipped on board" requirement.

A bill of lading containing pre-printed wording that the goods have been "received by the carrier . . ." (such as the Bill of Lading here) is commonly known as a "received

5

bill of lading", or "received for shipment bill of lading". See ICC Banking Commission Official Opinions, 1997, R284 (explaining "Received Bill" versus "Shipped Bill") (attached as Exhibit 5 to the Chen Decl.). A received bill of lading is in contradistinction to a "shipped bill of lading", which contains pre-printed words "shipped in apparent good order and condition . . ." (or other words of similar effect). Id. A shipped bill of lading containing pre-printed wording to the effect of "shipped", "shipped on board", or other similar wording, is sufficient to satisfy the "shipped on board" requirement of Article 20(a)(ii). See ICC Banking Commission Official Opinions, 2000/01, R455 (bill of lading containing "shipped on board" language satisfied shipped on board requirement) (attached as Exhibit 6 to the Chen Decl.); ICC Banking Commission Official Opinions, 1998/99, R347 (same) (attached as Exhibit 7 to the Chen Decl.).

In contrast, it is well-established that a received bill of lading (such as the Bill of Lading here) does *not* contain the necessary pre-printed wording required by Article 20(a)(ii). Thus, the ICC Banking Commission has squarely opined on this issue:

> Reference in the sub-Article to "Loading on board or shipment on a named vessel may be indicated by pre-printed wording" occurs where the bill of lading states, for example, "Shipped in apparent good order and condition . . ." instead of . . . "Received from the shipper in apparent good order . . .".

ICC Banking Commission Official Opinions, 1998/99, R349 (attached as Exhibit 8 to the Chen Decl.).[9] Courts in New York have reached the same conclusion. See Robalen, Inc. v. Generale De Banque S.A., No. 97 Civ. 0887, 1999 WL 688301, *4 (S.D.N.Y. Sept. 3, 1999) ("where an LC requires that an 'on board' bill of lading be presented to the bank, then the bill of lading must obviously contain a sufficiently clear indication that the goods have been loaded on board the

---

[9] Opinion R349 specifically interprets Article 23(a)(ii) of UCP 500, which is the direct predecessor of Article 20(a)(ii) of UCP 600 (the UCP 600 came into force only in 2007). Article 23(a)(ii) of UCP 500 does not differ in substance from Article 20(a)(ii) of UCP 600. Both require a bill of lading to indicate that the goods have been shipped or loaded on board a vessel, either by pre-printed wording or by an on board notation. A copy of Article 23(a)(ii) of UCP 500 is attached as Exhibit 9 to the Chen Decl.

6

vessel"; pre-printed wording in bill of lading was insufficient because it "did not state that the goods had been loaded on board a named vessel", and the "mere signing and dating of the bill of lading was not sufficient . . . to indicate the loading of the goods or the date of such loading").[10]

The Bill of Lading at issue here merely states that the goods have been "received" by the carrier and does not contain the words "shipped" or "on board", or any combination thereof. It is clearly a received bill of lading, rather than a shipped bill of lading. Therefore, as CVD already concedes that the Bill of Lading does not contain an on board notation, it does not satisfy the "shipped on board" requirement of Article 20(a)(ii).[11]

The ICC's International Standard Banking Practice (the "ISBP Publication 681"), relied upon by CVD, does not contradict the authorities cited above. In fact, it confirms that the Bill of Lading fails to satisfy the "shipped on board" requirement. The paragraph of the ISBP Publication 681 cited by CVD refers to several phrases or words that have the same effect as "shipped on board". In particular, the paragraph states that "phrases incorporating words such as 'shipped' or 'on board' have the same effect as 'Shipped on board'". CVD Mem., p. 8. The pre-printed wording in the Bill of Lading relied upon by CVD does *not* contain the words "shipped" or "on board" (or any combination thereof), or any of the words or phrases mentioned in the

---

[10] Robalen was cited by Mizuho in its initial Memorandum. In addition to failing to cite to any supporting authority for its argument that the Bill of Lading was proper, CVD also fails completely to address Robalen.

[11] CVD indicates that a second bill of lading, with an on board notation, was forwarded by CVD to Mizuho following the initial submission of the Bill of Lading, "not as an additional presentation but as a clarification to state explicitly what the initial submissions stated, by operation of 'law'". CVD Mem., p. 8, n. 9. Leaving aside whether such "clarification" is even allowed under or contemplated by the UCP, or (even if possible under the UCP) whether the "clarification" was timely under the terms of the Taiwan Glass L/C, the very existence of the second bill of lading is a clear indication that CVD itself believed that the Bill of Lading was improper. In any event, the second bill of lading does not provide support for the view that CVD submitted a proper bill of lading under the Taiwan Glass L/C, because (1) CVD now relies only on the (first) Bill of Lading and already concedes that the second bill of lading was not even a "presentation" under the Taiwan Glass L/C, (id.); and (2) even if the second bill of lading can be considered a second "presentation" of documents under the Taiwan Glass L/C (contrary to CVD's own admission), such presentation would have been untimely under the terms of the Taiwan Glass L/C. See Mizuho Mem., pp. 17-19.

7

ISBP. The Bill of Lading merely indicates that goods have been "received" by the carrier. As such, it is merely a "received bill of lading" and, as noted above, is insufficient to satisfy the "shipped on board" requirement of Article 20(a)(ii).

It is axiomatic that the terms of a letter of credit must be strictly complied with; documents which are "almost the same, or which will do just as well", cannot suffice. Alaska Textile Co. v. Chase Manhattan Bank, N.A., 982 F.2d 813, 816 (2d Cir. 1992). Having submitted a Bill of Lading that is improper, CVD cannot now claim that it has strictly complied with the terms of the Taiwan Glass L/C.

### III. The Importance of the "Shipped on Board" Requirement

The "shipped on board" requirement is not merely a technical or academic issue with no great consequence (although, even if the requirement were technical or academic, non-compliance therewith would still be sufficient grounds by itself to deny recovery to CVD, see Alaska Textile Co., supra). Rather, it is related to how the shipment date of the goods is determined, which is a matter of great significance in this case. Under the Taiwan Glass L/C, the latest date that CVD was allowed to ship the goods was November 30, 2009. See Taiwan Glass L/C, Exhibit B to the Huang Decl., Field 44C. Thus, to be entitled to payment under the Taiwan Glass L/C, CVD must be able to show, on its bill of lading, that the goods were shipped on or before November 30, 2009. Because the Bill of Lading does not contain an on board notation, CVD *cannot* show that the shipment date was on or before November 30, 2009 and, therefore, is not entitled to payment under the Taiwan Glass L/C or to cancel the CVD L/C.

The determination of the date of shipment is also governed by Article 20(a)(ii). After stating that a bill of lading must indicate that the goods have been shipped on board a

8

vessel by either pre-printed wording or by an on board notation, the rest of Article 20(a)(ii) states, in part:

> The date of issuance of the bill of lading will be deemed to be the date of shipment unless the bill of lading contains an on board notation indicating the date of shipment, in which case the date stated in the on board notation will be deemed to be the date of shipment.

See Exhibit 3 to the Chen Decl. Thus, under Article 20(a)(ii), the date of shipment may be either (1) the issuance date of the bill of lading (see, e.g., the date on the bottom right hand corner of the Bill of Lading, Exhibit 2 to the Chen Decl.); or (2) where there is an on board notation, the date indicated in the on board notation. Because, as discussed, a received bill of lading is required to have an on board notation, and (where there is an on board notation) the date indicated in the on board notation is deemed to be the date of shipment, the shipment date of a properly-issued received bill of lading (i.e., with a proper on board notation) is the date indicated in the on board notation, not the issuance date of the received bill of lading. This is because the date of loading the goods on board a vessel may differ from (and sometimes be much later than) the date when the carrier first received the goods from the shipper/seller and issued the received bill of lading.

This is in fact what happened with respect to the goods that CVD shipped to Taiwan Glass. Although the Bill of Lading (which, as CVD concedes, does not contain an on board notation) purports to have been issued (by EMO Trans, Inc., CVD's freight forwarder) on November 27, 2009, the shipping company's own records indicate that the goods were not loaded onto a vessel until December 5, 2009, five days after the November 30, 2009 deadline. See Shipping Company Cargo Tracking Record, a true and correct copy of which is attached as Exhibit 10 to the Chen Decl. Thus, even assuming that the Bill of Lading's issuance date were

9

correct,[12] the actual "shipped on board" date was December 5, 2009, and the Bill of Lading, had it been correctly issued, would necessarily have included an on board notation dated December 5, 2009. This is why the "shipped on board" requirement is important. In this case, had the Bill of Lading included an on board notation dated December 5, 2009, the Bill of Lading on its face would have clearly revealed that CVD was not entitled to payment under the Taiwan Glass L/C, nor would it have been entitled to cancel the CVD L/C (as it purports to have done).

Because it fails to satisfy the "shipped on board" requirement, the Bill of Lading in effect conceals the fact that CVD failed to ship the goods by the November 30, 2009 deadline. Indeed, CVD's own employee, Ms. Karen Hamberg, described the Bill of Lading as a "fake BOL". See Email from Ms. Hamberg to EMO Trans, Inc. dated November 4, 2009, TG 4635 to TG 4640, a true and correct copy of which is attached as Exhibit 13 to the Chen Decl. As such, not only does the Bill of Lading fail to comply strictly with the terms of the Taiwan Glass L/C, but it is clear that no truthful bill of lading could have satisfied the letter of credit.

---

[12] In fact, there is evidence in the record that even the issuance date of the Bill of Lading was incorrect and was intentionally changed (at the direction of CVD) to November 27, 2009 (which happened to be a Friday over the Thanksgiving holiday) from a later date. In particular, in an email dated November 30, 2009, Ms. Hamberg of CVD asked Ms. Guzman of EMO Trans. Inc. to change the date of the Bill of Lading to November 27, 2009 from November 30, 2009. See Email dated November 30, 2009, TG 3947 to TG 3953 at TG 3947-3948, attached as Exhibit 11 to the Chen Decl. The November 30 date on the Bill of Lading was itself apparently changed from December 3, 2009, again at the behest of Ms. Hamberg. See Email dated November 10, 2009, TG 4806 to TG 4820 at TG 4806-4807, attached as Exhibit 12 to the Chen Decl.

## **CONCLUSION**

For all of the foregoing reasons, Taiwan Glass respectfully submits that the Bill of Lading is improper under the UCP, that CVD's cross motion for summary judgment should be denied on the grounds that the Bill of Lading was not proper, and otherwise respectfully requests that the Court grant such further relief as it deems just and appropriate.

Dated: New York, New York
       September 30, 2010

ALLEGAERT BERGER & VOGEL LLP

By: _____
Christopher Allegaert (callegaert@abv.com)
Michael Vogel (mvogel@abv.com)
Howard Chen (hchen@abv.com)
111 Broadway, 20th Floor
New York, NY 10006
(212) 571-0550

Attorneys for Defendant-Counterclaimant
Taiwan Glass Industrial Corporation

11