UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                                 :
CVD EQUIPMENT CORPORATION,                                       :
                                                                 :
                                    Plaintiff,                   :      10 CIV 0573 (RJH) (RLE)
                                                                 :
            -against-                                            :
                                                                 :
TAIWAN GLASS INDUSTRIAL                                          :
CORPORATION, and MIZUHO CORPORATE                               :
BANK, LTD.,                                                      :
                                                                 :
                                    Defendants.                  :
-----------------------------------------------------------------x
                                                                 :
TAIWAN GLASS INDUSTRIAL                                          :
CORPORATION,                                                     :
                                                                 :
                        Counterclaim Plaintiff,                  :
                                                                 :
            -against-                                            :
                                                                 :
CAPITAL ONE, N.A.,                                               :
                                                                 :
                        Counterclaim Defendant.                  :
-----------------------------------------------------------------x


**TAIWAN GLASS INDUSTRIAL CORPORATION'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST
COUNTERCLAIM DEFENDANT CAPITAL ONE, N.A.**


ALLEGAERT BERGER & VOGEL LLP
111 Broadway, 20th Floor
New York, New York 10006
(212) 571-0550

*Attorneys for Defendant-Counterclaimant
Taiwan Glass Industrial Corporation*

## Table of Contents

Table of Authorities ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 2

I.    The Standby Letter of Credit .......................................................................... 2

II.   The Purported Cancellation of the Standby LC and Taiwan Glass's
      Attempted Drawings Thereunder ................................................................... 4

ARGUMENT .............................................................................................................. 7

I.    Standard for Summary Judgment ................................................................... 8

II.   The Law Governing the Standby LC ............................................................. 9

III.  The Bill of Lading Does Not Comply With Article 20 of the UCP 600 ........ 10

      (1)    The Pre-Printed Wording in the Bill of Lading Is Insufficient to
             Satisfy the "Shipped on Board" Requirement of Article 20(a)(ii) ....... 11

      (2)    The Absence of an On Board Notation Cannot be Remedied by
             Relying on the Issuance Date of the Bill of Lading ........................... 13

CONCLUSION ........................................................................................................... 18

i

## Table of Authorities

Cases

3Com Corp. v. Banco do Brasil, S.A.,
171 F.3d 739 (2d Cir. 1999)...............................................................8, 9, 10

Alaska Textile Co. v. Chase Manhattan Bank, N.A.,
982 F.2d 813 (2d Cir. 1992).................................................................9, 10

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986)..................................................................................8

Blonder & Co. v. Citibank, N.A.,
28 A.D.3d 180, 808 N.Y.S.2d 214 (1st Dep't 2006) ...........................8, 11

Dawson v. County of Westchester,
373 F.3d 265 (2d Cir. 2004)......................................................................9

Ocean Rig ASA v. Safra Nat'l Bank of New York,
72 F. Supp. 2d 193 (S.D.N.Y. 1999)..........................................................9

Robalen, Inc. v. Generale De Banque S.A.,
No. 97 Civ. 0887, 1999 WL 688301 (S.D.N.Y. Sept. 3, 1999)...................13

Western Int'l Forest Products, Inc. v. Shinhan Bank,
860 F. Supp. 151 (S.D.N.Y. 1994) ...........................................................11

Wing Shing Products (BVI), Ltd. v. Sima Telex Manufactory  Co.,
479 F. Supp. 2d 388 (S.D.N.Y. 2007)........................................................9


Other Authorities

Fed. R. Civ. P. 56(a) .................................................................................8

ICC Banking Commission Official Opinions, 1997, R284 ..........................12

ICC Banking Commission Official Opinions, 1998/99, R347 ................12, 13

ICC Banking Commission Official Opinions, 2000/01, R455 .....................12

ICC Banking Commission Official Opinions, 2005-2008, R638 / TA629.................11

New York Uniform Commercial Code § 5-116(c) .....................................10

Page(s)

UCP 500, Article 23(a)(ii) ...................................................................................................13

UCP 600, Article 20........................................................................................................ *passim*

UCP 600, Article 20(a)(ii) ............................................................................................. *passim*

Defendant-Counterclaimant Taiwan Glass Industrial Corporation ("Taiwan Glass") respectfully submits this Memorandum of Law in support of its motion for summary judgment against Counterclaim Defendant Capital One, N.A. ("Capital One").

## PRELIMINARY STATEMENT

This motion concerns whether Capital One wrongfully dishonored a standby letter of credit it issued in favor of Taiwan Glass. The sole ground upon which Capital One refused to honor the standby letter of credit was that Capital One had purportedly cancelled the standby letter of credit based on a bill of lading dated November 27, 2009 (the "Bill of Lading") submitted by plaintiff CVD Equipment Corporation ("CVD"). Thus, the dispositive question to be decided is whether the Bill of Lading, as a matter of law, complied with applicable law and rules. Taiwan Glass respectfully submits that the Bill of Lading was improper and otherwise invalid because it does not contain an "on board" notation, as required by Article 20 of the applicable Uniform Customs and Practice for Documentary Credits (2007 Revision) ("UCP 600"). As such, Capital One was not permitted to accept or rely upon the Bill of Lading in cancelling the standby letter of credit. Capital One's refusal to honor the standby letter of credit, based on the purported cancellation of the standby letter of credit, was therefore wrongful.

Article 20(a)(ii) of UCP 600 requires a bill of lading to contain information indicating that the goods have been shipped or loaded "on board" a vessel, and permits such information to be shown by one of two methods: (1) pre-printed wording to the effect that the goods have been shipped on board a vessel; or (2) an "on board notation" indicating the date on which the goods were shipped on board a vessel. It is apparent from the face of the Bill of Lading that it does not contain any on board notation. Therefore, as a matter of law, the Bill of Lading cannot satisfy Article 20(a)(ii) unless the pre-printed wording in the Bill of Lading is

sufficient to satisfy the "shipped on board" requirement of that Article.  As shown below, because the Bill of Lading's pre-printed wording states only that the goods have been "received" by the carrier, instead of containing words to the effect that the goods have been "shipped" or "loaded" on board a vessel, the Bill of Lading is insufficient as a matter of law to satisfy the "shipped on board" requirement.

## STATEMENT OF FACTS

**I.      The Standby Letter of Credit**

   In August of 2008, Taiwan Glass entered into a contract with CVD to purchase a certain type of equipment called "Continuous Atmospheric Pressure Chemical Vapor Deposition System" and "Exhaust Gas System", and related know-how and services (together, the "Equipment").  Declaration of T.M. Tsai dated January 27, 2011 (the "Tsai Decl."), ¶ 2.  Under the contract, the purchase price for the Equipment was $11,880,000.00.  Id., ¶ 3.  Taiwan Glass agreed to pay, in advance, 30% of the purchase price (i.e., $3,564,000.00) to CVD when CVD obtained a standby letter of credit in favor of Taiwan Glass for the same amount.  Id.  CVD obtained such a letter of credit on or about October 8, 2008, when Capital One issued a standby letter of credit in the amount of $3,564,000.00, with Taiwan Glass as the beneficiary and CVD as the applicant (the "Standby LC").  Id., ¶ 4, Exhibit 1.  Shortly thereafter, on October 16, 2008, Taiwan Glass paid $3,564,000.00 to CVD in accordance with the parties' agreement.  Id., ¶ 6.

   Reflecting the Standby LC's role as a type of "performance guarantee" (i.e., Taiwan Glass would recover its "down payment" of $3,564,000.00 if CVD defaulted in performing the contract and the conditions for payment under the Standby LC are otherwise fulfilled), the Standby LC states that it was "issued as a performance guarantee covering 30 pct of purchase price of" the Equipment.  Id., ¶ 5.  By issuing the Standby LC, Capital One promised

that a "draft drawn and negotiated in conformity with the terms of this letter of credit will be duly honored on presentation of documents as specified above . . .". Id., ¶ 7. Documents required to be presented for drawing under the Standby LC were: (1) "proof of wire transfer of USD3,564,000 dated --- to CVD Equipment Corporation, 1860 Smithtown Avenue, Ronkonkoma, New York 11779 thru Capital One, N.A., New York"; (2) "copy of request sent to CVD Equipment Corporation instructing them to ship 'Continuous TCO APCVD System and Exhaust Gas System' dated not later [than] November 1, 2009"; and (3) "Beneficiary's signed statement certifying that applicant defaulted in the terms and conditions of a certain agreement dated August 29, 2008 between CVD Equipment Corporation ('Seller') and Taiwan Glass Ind. Corp. ('Buyer')" (together, the "Presentation Documents"). Id., ¶ 8.

Other terms of the Standby LC that are relevant to this motion include:

(a)     the Standby LC has an expiry date of January 21, 2010 at 3:00 p.m.;

(b)     drawings under the Standby LC could be made only after January 1, 2010;

(c)     the Standby LC is "subject to the Uniform Customs and Practice for Documentary Credits (2007 Revision) International Chamber of Commerce Publication No. 600"; and

(d)     the Standby LC may be cancelled upon the earliest to occur of several events, including the presentation to Capital One of "a copy of an original bill of lading submitted by CVD Equipment Corporation issued to the order of Taiwan Glass Ind. Corp., 261 Sec 3, Nanking E. Rd, Taipei 10566, Taiwan dated not later than November 30, 2009 and indicating CVD Equipment Corporation as shipper".

Id., ¶¶ 9-11, Exhibit 1.

## II.    The Purported Cancellation of the Standby LC and Taiwan Glass's Attempted Drawings Thereunder

By early December 2009, it had become clear to Taiwan Glass that CVD had defaulted in its performance of the contract.[1]  Id., ¶ 12.  However, before a drawing could be made under the Standby LC (drawings could be made only after January 1, 2010), CVD sought to have the Standby LC cancelled by Capital One. Id., ¶ 13.  Sometime early in December 2009, and without informing Taiwan Glass, CVD submitted the Bill of Lading to Capital One for the purpose of having Capital One cancel the Standby LC. Id.  Taiwan Glass only found out about the purported cancellation of the Standby LC on or about December 8, 2009, when Capital One informed Taiwan Glass's bank, Mizuho Corporate Bank, Ltd. ("Mizuho"),[2] that Capital One had purportedly cancelled the Standby LC based on the Bill of Lading submitted by CVD. Id., ¶ 14, Exhibit 3.

The Bill of Lading, however, was improper and invalid under UCP 600, and the Standby LC should not have been cancelled based on the Bill of Lading. Id., ¶ 16.  Since it was a "received bill of lading", as opposed to a "shipped bill of lading", the Bill of Lading was required under Article 20 of UCP 600 to have an "on board" notation indicating when the goods were shipped on board a vessel (see discussion in Argument below). Id.  The Bill of Lading does not have an "on board" notation. Id., ¶ 17, Exhibit 5.

In its various telex communications with Capital One (in particular, those dated December 9 and 14, 2009, and January 11, 2010), Taiwan Glass explained to Capital One that the Bill of Lading failed to comply with Article 20 of UCP 600 and that the Standby LC should

---

[1] CVD disputes that it had defaulted under the contract.  The existence of disputed factual issues between Taiwan Glass and CVD, of course, relates to the contract claims between Taiwan Glass and CVD, and does not implicate the present motion.

[2] Taiwan Glass was, and remains, a customer of Mizuho.  Communications between Taiwan Glass and Capital One concerning the Standby LC were relayed through Mizuho.

not have been cancelled.  Id., ¶¶ 16, 22, 28, Exhibits 4, 7, 11.  Moreover, Taiwan Glass

repeatedly pointed out to Capital One that records from CVD's shipping company, OOCL,

indicated that the goods were not loaded on board a ship until December 5, 2009, long after the

November 30, 2009 deadline agreed to by Taiwan Glass and CVD.[3]  Id., ¶¶ 18-19, 23, Exhibit 8.

On its response to Taiwan Glass's telex communications, Capital One did not

dispute the applicability of UCP 600 to the Standby LC.  In fact, Capital One insisted that the

Bill of Lading complied with the requirements of Article 20 of UCP 600, and disregarded the

information that OOCL's records indicated that the goods were not loaded on board a vessel

until after November 30, 2009.  Id., ¶¶ 20-21, Exhibit 6.  In particular, Capital One argued that

the Bill of Lading was proper because it "indicated that the merchandise was received by the

carrier and was signed on behalf of the carrier".  Id., ¶ 20.  Furthermore, Capital One argued that

the "absence of an onboard notation is also covered in Article 20(a)(ii) quote the date of issuance

of the bill of lading will be deemed to be the date of shipment unless the bill of lading contains

an onboard notation unquote".  Id.

On January 4, 2010, Taiwan Glass properly requested payment of $3,564,000.00

under the Standby LC by presenting certain documents, including the Presentation Documents,

to Capital One.  Id., ¶ 24, Exhibit 9.  On January 6, 2010, Capital One refused to honor Taiwan

Glass's request for payment under the Standby LC, based on two alleged discrepancies.  Id., ¶

25, Exhibit 10.  First, Capital One stated that the "beneficiary's statement is not as per the letter

of credit".  Id., ¶ 26, Exhibit 10.  In particular, Taiwan Glass's "Beneficiary Certificate" (see

Exhibit 9 to the Tsai Decl., TG 173) states that applicant (CVD) "defaulted in the terms and

---

[3] As explained further below, the fact that the Bill of Lading was a "received bill of lading", rather than a "shipped bill of lading", concealed exactly when the goods were loaded on board a ship (i.e., the shipment date).  That is why, under Article 20 of UCP 600, a received bill of lading, such as the Bill of Lading here, must contain an "on board" notation indicating when the goods were shipped on board.

conditions of the Agreement dated August 29, 2008 between us".  According to Capital One, the

language used in Taiwan Glass's Beneficiary Certificate was not in conformity with the Standby

LC because the Standby LC required the beneficiary to certify that applicant "defaulted in the

terms and conditions of a certain agreement dated August 29, 2008 between CVD Equipment

Corporation ('Seller') and Taiwan Glass Ind. Corp ('Buyer')".  Id., ¶ 26, Exhibit 10.

   The second reason for Capital One's refusal to honor Taiwan Glass's request for

payment was that the Standby LC had, according to Capital One, "expired".  Id., ¶ 27, Exhibit

10.  As the basis for its view that the Standby LC had expired, Capital One referred to its

communication dated December 8, 2009 (which had informed Taiwan Glass that the Standby LC

had been cancelled based on the Bill of Lading, see Exhibit 3 to the Tsai Decl.).  Id., ¶ 27,

Exhibit 10.

   Taiwan Glass disagreed with Capital One's refusal to honor the Standby LC,

stating in a telex dated January 11, 2010, among other things, that the purported cancellation of

the Standby LC was improper because the Bill of Lading was invalid.  Id., ¶ 28, Exhibit 11.  On

January 11, 2010 (well before January 21, 2010, the expiry date of the Standby LC), Taiwan

Glass again properly requested payment under the Standby LC, submitting various documents

(including the Presentation Documents) to Capital One, including a revised Beneficiary

Certificate now stating that applicant "defaulted in the terms and conditions of a certain

Agreement dated August 29, 2008 between CVD Equipment Corporation ('Seller') and Taiwan

Glass Ind. Corp ('Buyer')".  Id., ¶ 29, Exhibit 12.  On January 13, 2010, Capital One again

refused to honor Taiwan Glass's request for payment under the Standby LC, now on the sole

basis that "the letter of credit expired and is no longer valid", and explaining that the purported

cancellation of the Standby LC was proper because the Bill of Lading complied with the

condition for cancellation under the Standby LC. Id., ¶ 30, Exhibit 13. Moreover, relying on

two provisions of the UCP 600, Capital One again disregarded the shipping company's records

showing that the goods were not loaded on board a ship until after November 30, 2009. Id.,

Exhibit 13.[4]

## ARGUMENT

The material facts upon which Taiwan Glass's wrongful dishonor claim against

Capital One is based cannot be disputed. The broad outline of the material facts is clear and

straightforward: Capital One purported to cancel the Standby LC based on the Bill of Lading;

Taiwan Glass disagreed with and objected to such purported cancellation; Taiwan Glass

attempted to draw down on the Standby LC; Capital One refused to honor the draw down request

because of an alleged discrepancy in Taiwan Glass's beneficiary statement and because of the

purported cancellation of the Standby LC; Taiwan Glass attempted again to draw down on the

Standby LC, this time submitting a revised beneficiary statement; Capital One again refused to

honor the request, this time only because of the purported cancellation of the Standby LC.

Since the purported discrepancy in the beneficiary statement was corrected to

Capital One's satisfaction by Taiwan Glass in its second draw down request (as Capital One did

not assert any problems with the revised beneficiary statement in its second refusal to honor), the

only legal issue in dispute, for purposes of this motion, is whether Capital One properly refused

to honor Taiwan Glass's draw down request because of the purported cancellation of the Standby

LC. In other words, the legal question to be decided by the Court in this motion is a narrow one

that is well suited to resolution on a motion for summary judgment: whether the Bill of Lading

---

[4] From Capital One's counsel's letter to the Court dated January 3, 2011, we understand that Capital One intends to move to dismiss Taiwan Glass's Counterclaims based, in part, on the existence of a second, revised bill of lading. We will deal fully with such an argument (and any other argument) if and when it is made by Capital One. For now, it is sufficient to note that Capital One never relied upon the second bill of lading in cancelling the Standby LC and, indeed, never even mentioned the second bill of lading in its correspondence.

conformed with UCP 600 such that it could be properly relied upon by Capital One to cancel the Standby LC. See Blonder & Co. v. Citibank, N.A., 28 A.D.3d 180, 183, 808 N.Y.S.2d 214 (1st Dep't 2006) ("While the existence and scope of [trade] usage ordinarily present factual issues, where such a usage is embodied in a trade code such as the UCP or other writing, 'the interpretation of the writing is for the court'").

As shown below, the Bill of Lading failed to comply with the requirements of Article 20 of UCP 600 and, as such, was improper and invalid and should not have been relied upon by Capital One to cancel the Standby LC. Accordingly, Capital One was obligated to pay on the Standby LC, and Taiwan Glass's motion for summary judgment should be granted.

## I.      Standard for Summary Judgment

Under Fed. R. Civ. P. 56(a), the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law". Summary judgment is appropriate where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party". 3Com Corp. v. Banco do Brasil, S.A., 171 F.3d 739, 743 (2d Cir. 1999) (citations omitted). Although, in determining whether a genuine factual dispute exists, "courts must resolve all ambiguities and draw all inferences in favor of the non-movant", id., "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment". Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Factual disputes that are "irrelevant or unnecessary", as determined by the applicable substantive law, will not be counted as material. Id. Moreover, "[i]n making its showing that a genuine issue of material fact exists, the nonmoving party may not rely on 'the mere existence of a scintilla of evidence' to support its position, but must instead proffer 'evidence on which the jury could reasonably find

8

for the [plaintiff]'". <u>Wing Shing Products (BVI), Ltd. v. Sima Telex Manufactory Co.</u>, 479 F. Supp. 2d 388, 396 (S.D.N.Y. 2007) (Holwell, J.) (citing <u>Dawson v. County of Westchester</u>, 373 F.3d 265, 272 (2d Cir. 2004)).

It is well established that "[a]ctions on letters of credit are well-suited to determination on motions for summary judgment 'because they normally present solely legal issues related to an exchange of documents'". <u>Ocean Rig ASA v. Safra Nat'l Bank of New York</u>, 72 F. Supp. 2d 193, 198 (S.D.N.Y. 1999).

## II.    The Law Governing the Standby LC

The "great utility" of letters of credit "derive[s] primarily from the fundamental principle that the letter of credit is an obligation wholly independent of the underlying commercial transaction". <u>3Com</u>, 171 F.3d at 744. This independence principle means that "the issuing bank's obligation to honor drafts drawn on a letter of credit by the beneficiary is separate and independent from any obligation of its customer to the beneficiary under the sale of goods contract and separate as well from any obligation of the issuer to its customer under their agreement". <u>Id.</u> at 741 (citations omitted). Since a letter of credit transaction is "concerned only with documents, 'the terms and conditions of the letter of credit must be strictly adhered to . . . [and] [t]here is no room for documents which are almost the same, or which will do just as well'". <u>Alaska Textile Co. v. Chase Manhattan Bank, N.A.</u>, 982 F.2d 813, 816 (2d Cir. 1992). If the documents submitted for payment comply with the terms of the letter of credit, the issuing bank's "duty to pay is absolute", regardless of any disputes in the underlying commercial transaction. <u>Id.</u> Moreover, the issuing bank "must swiftly and carefully examine documents submitted for payment", and the issuing bank is "estopped from complaining about discrepancies [it] did not assert promptly". <u>Id.</u>

The Uniform Customs and Practice for Documentary Credits, the latest version of which is the 2007 revised version (i.e., the UCP 600), is "a compilation of internationally accepted commercial practices, first issued in 1930 by the International Chamber of Commerce and revised approximately every ten years since". Id. The UCP "enjoys a unique status". Id. Although "it is not law, the UCP applies to most letters of credit . . . because issuers generally incorporate it into their credits". Id.

In this case, the Standby LC expressly incorporates the UCP 600 as the governing rules. See Exhibit 1 to the Tsai Decl. Thus, the UCP 600, including Article 20 thereof, applies to the Standby LC. See New York Uniform Commercial Code ("UCC") § 5-116(c) ("the liability of an issuer . . . is governed by any rules of custom or practice, such as the uniform customs and practice for documentary credits, to which the letter of credit . . . is expressly made subject"); Alaska Textile, supra (UCP applies to letters of credit that incorporate it); 3Com, supra (applying UCP to wrongful dishonor claim under standby letter of credit). Indeed, Capital One itself, in its telex communications with Taiwan Glass (through Mizuho), repeatedly referred to and relied on various provisions of the UCP 600, including Article 20. See Capital One's telex communications dated December 10, 2009 (Exhibit 6 to the Tsai Decl.) and January 13, 2010 (Exhibit 13 to the Tsai Decl.).

III.   **The Bill of Lading Does Not Comply With Article 20 of the UCP 600.**

Article 20(a)(ii) of the UCP 600 provides, in part:

a.   A bill of lading, however, named, must appear to:

    ii.   indicate that the goods have been shipped on board a named vessel at the port of loading stated in the credit by:

        • pre-printed wording, or

- an on board notation indicating the date on which the goods have been shipped on board.[5]

Thus, a bill of lading is required to contain information to the effect that the goods have been "shipped on board" a vessel. That information may be shown on the bill of lading in one of two ways: (1) by pre-printed wording; or (2) by an on board notation. See Blonder, 28 A.D.3d at 185 ("loading on board may be indicated . . . by pre-printed wording on the bill of lading or by a notation of the date on which the goods have been loaded on board"); see also Official Opinions of the International Chamber of Commerce ("ICC") Banking Commission, 2005-2008, R638 / TA629 ("a bill of lading subject to UCP 600 article 20 . . . would also need to evidence that the goods had been shipped on board a named vessel, by pre-printed wording to that effect or an on board notation indicating the date on which the goods had been shipped on board").[6]

It cannot be disputed that the Bill of Lading contains no on board notation. See Bill of Lading, Exhibit 5 to the Tsai Decl. Therefore, the only way that the Bill of Lading can satisfy the "shipped on board" requirement of Article 20(a)(ii) is if it contains "pre-printed wording" to the effect that the goods had been shipped on board a vessel.

    (1)    The Pre-Printed Wording in the Bill of Lading Is Insufficient to Satisfy the "Shipped on Board" Requirement of Article 20(a)(ii).

In its telex communication dated December 9, 2009, Capital One contended that the Bill of Lading complied with Article 20, arguing that the Bill of Lading "indicated that the merchandise was received by the carrier and was signed on behalf of the carrier". See Exhibit 6

---

[5] Article 20 of the UCP 600, along with the UCP Drafting Group's Commentary, is attached as Exhibit 1 to the Declaration of Howard Chen, dated January 28, 2011 (the "Chen Decl.").

[6] The Official Opinions of the ICC Banking Commission, 2005-2008, R638 / TA629, is attached as Exhibit 2 to the Chen Decl. The opinions of the ICC Banking Commission "aim to encourage uniformity of practice" and to "serve as guideposts to courts in interpreting [the UCP]". See id., Foreword to ICC Opinions, 2005-2008. The ICC Banking Commission Opinions, while not law, "are entitled to some persuasive weight in interpreting the UCP". Western Int'l Forest Products, Inc. v. Shinhan Bank, 860 F. Supp. 151, 154 (S.D.N.Y. 1994).

to the Tsai Decl.  The precise pre-printed wording in the Bill of Lading (see bottom right hand

corner) is as follows:

> Received by the Carrier in apparent good order and condition unless otherwise
> indicated hereon the Container(s) and/or goods hereinafter mentioned to be
> transported and/or otherwise forwarded from the Place of Receipt to the Intended
> Place of Delivery . . . .

Exhibit 5 to the Tsai Decl.  This wording, however, clearly does not state that the goods had been

shipped on board a vessel.  To the contrary, as set forth below, it is well-established, as a matter

of law and of banking practice, that the kind of pre-printed wording in this Bill of Lading does

*not* satisfy the "shipped on board" requirement under Article 20.

A bill of lading containing pre-printed wording that the goods have been

"received by the carrier . . ." (such as the Bill of Lading here) is commonly known as a "received

bill of lading", or "received for shipment bill of lading".  See ICC Banking Commission Official

Opinions, 1997, R284 (explaining "Received Bill" versus "Shipped Bill") (attached as Exhibit 3

to the Chen Decl.).  A received bill of lading is in contradistinction to a "shipped bill of lading",

which contains pre-printed words "shipped in apparent good order and condition . . ." (or other

words of similar effect).  Id.  A shipped bill of lading containing pre-printed wording to the

effect of "shipped", "shipped on board", or other similar wording, *is* sufficient to satisfy the

"shipped on board" requirement of Article 20(a)(ii).  See ICC Banking Commission Official

Opinions, 2000/01, R455 (bill of lading containing "shipped on board" language satisfied

shipped on board requirement) (attached as Exhibit 4 to the Chen Decl.); ICC Banking

Commission Official Opinions, 1998/99, R347 (same) (attached as Exhibit 5 to the Chen Decl.).

In contrast, it is well-established that a received bill of lading (such as the Bill of

Lading here) does *not* contain the necessary pre-printed wording required by Article 20(a)(ii).

Thus, the ICC Banking Commission has squarely opined on this issue:

12

> Reference in the sub-Article to "Loading on board or shipment on a named vessel
> may be indicated by pre-printed wording" occurs where the bill of lading states,
> for example, "Shipped in apparent good order and condition . . ." instead of . . .
> "Received from the shipper in apparent good order . . .".

ICC Banking Commission Official Opinions, 1998/99, R349 (attached as Exhibit 6 to the Chen

Decl.).[7]  Courts in New York have reached the same conclusion.  See Robalen, Inc. v. Generale

De Banque S.A., No. 97 Civ. 0887, 1999 WL 688301, *4 (S.D.N.Y. Sept. 3, 1999) ("where an

LC requires that an 'on board' bill of lading be presented to the bank, then the bill of lading must

obviously contain a sufficiently clear indication that the goods have been loaded on board the

vessel"; pre-printed wording in bill of lading was insufficient because it "did not state that the

goods had been loaded on board a named vessel", and the "mere signing and dating of the bill of

lading was not sufficient . . . to indicate the loading of the goods or the date of such loading").

The Bill of Lading merely states that the goods have been "received" by the

carrier and does not contain the words "shipped" or "on board", or any combination thereof.  It is

clearly a received bill of lading, rather than a shipped bill of lading.  Therefore, under Article 20,

an on board notation is required.  As it is apparent that the Bill of Lading does not contain an on

board notation, the Bill of Lading does not satisfy the "shipped on board" requirement of Article

20(a)(ii).

(2)     The Absence of an On Board Notation Cannot be Remedied by Relying on the
        Issuance Date of the Bill of Lading.

Capital One, in its December 10, 2009 telex communication (Exhibit 6 to the Tsai

Decl.), argued that the "absence of an onboard notation is also covered under Article 20(a)(ii)

---

[7] Opinion R349 interprets Article 23(a)(ii) of UCP 500, which is the direct predecessor of Article 20(a)(ii) of UCP 600 (the UCP 600 came into force only in 2007).  Article 23(a)(ii) of UCP 500 does not differ in substance from Article 20(a)(ii) of UCP 600.  Both require a bill of lading to indicate that the goods have been shipped or loaded on board a vessel, either by pre-printed wording or by an on board notation.  A copy of Article 23 of UCP 500 is attached as Exhibit 7 to the Chen Decl.

quote the date of issuance of the bill of lading will be deemed to be the date of shipment unless the bill of lading contains an onboard notation unquote". Capital One's telex is, of course, an implicit acknowledgment that the Bill of Lading did not contain an on board notation, as it indicated that the bank was relying upon the issuance date as a substitute for the "absence of an onboard notation". Capital One's argument, however, miscomprehends the purpose of Article 20 and the connection between the on board notation and the shipment date.

The determination of the date of shipment is also governed by Article 20(a)(ii). After stating the "shipped on board" requirement (i.e., that a bill of lading must indicate that the goods have been shipped on board a vessel by either pre-printed wording or by an on board notation), Article 20(a)(ii) states, in part:

> The date of issuance of the bill of lading will be deemed to be the date of shipment unless the bill of lading contains an on board notation indicating the date of shipment, in which case the date stated in the on board notation will be deemed to be the date of shipment.

See Exhibit 1 to the Chen Decl. Thus, under Article 20(a)(ii), the date of shipment may be either (1) the issuance date of the bill of lading; or (2) where there is an on board notation, the date indicated in the on board notation. Because, as discussed, a received bill of lading is required to have an on board notation, and (where there is an on board notation) the date indicated in the on board notation is deemed to be the date of shipment, the shipment date of a properly issued received bill of lading (i.e., with a proper on board notation) is the date indicated in the on board notation, not the issuance date of the received bill of lading. Put another way, the date of issuance will only be deemed to be the date of shipment when the bill of lading, properly issued, does *not* contain an on board notation, i.e., when the shipped on board requirement is satisfied by the bill of lading's pre-printed wording. This is because the date of loading the goods on board a vessel may differ from (and sometimes be much later than) the date when the carrier first

14

received the goods from the shipper/seller and issued the received bill of lading.  See

Commentary to Article 20 of UCP 600 (Exhibit 1 to the Chen Decl.) ("The emphasis in [the

shipped on board requirement] is that the document checker must be able to determine that the

bill of lading appears to indicate that the shipped on board statement (pre-printed wording or by a

separate notation) relates to loading on board the named vessel at the port of loading stated in the

credit and not to any pre-carriage of the goods between a place of receipt or taking in charge and

the port of loading").  In other words, a received bill of lading without an on board notation does

not comply with Article 20 of UCP 600.

   The concern stated in the Commentary to Article 20 stems from the potentially

different dates between, on the one hand, the loading of the goods at a "place of receipt or taking

in charge" (from where the goods are to be transported to the port of loading) and, on the other,

the loading of the goods on to a vessel at the port of loading.  The former will frequently be on

an earlier date (sometimes much earlier) than the latter.  This is in fact what occurred in this case

when CVD shipped the goods to Taiwan.  In her reply affidavit dated October 20, 2010 in

opposition to Mizuho's motion for summary judgment and in further support of CVD's motion

for summary judgment (both motions are pending before the Court), Ms. Karen Hamberg of

CVD states that the three containers containing the goods were picked up by truckers "from

CVD's plant on November 27, 2009".  See Hamberg Affidavit dated October 20, 2010

("Hamberg Aff."), ¶¶ 10-15.  Ms. Hamberg conspicuously does *not* state in her affidavit whether

the goods were in fact loaded on board a vessel on November 27, 2009.  It is, of course,

completely improbable that the goods (1) were picked up on November 27, 2009 (a Friday) from

CVD's plant in Ronkonkoma, New York; (2) transported by truck to a port in New York/New

Jersey, *and* (3) then loaded on board a vessel, all on the Friday of Thanksgiving weekend.  In

fact, that was not what happened here: as Taiwan Glass repeatedly informed Capital One, the shipping company's own records indicated that the goods were loaded on board a vessel on December 5, 2009, not November 27, 2009. See shipping company cargo tracking record, Exhibit 8 to the Tsai Decl. This is why a "received bill of lading" without an on board notation, indicating only when the goods were "received" by the trucker/carrier for transport and not when the goods were in fact loaded on board a vessel, does not comply with the requirements of Article 20 of UCP 600.

Thus, the portion of Article 20(a)(ii) quoted by Capital One in its December 10, 2009 telex communication (i.e., relating to the determination of the shipment date) has nothing to do with whether the Bill of Lading is required to have an on board notation in the first place. Since, as demonstrated above, a received bill of lading (such as the Bill of Lading here) is required to have an on board notation, the absence of an on board notation on a received bill of lading means that the shipment date *cannot* be determined from the face of such a bill of lading (thereby rendering the Bill of Lading non-conforming to the requirements of Article 20). It does not mean, as Capital One appears to contend, that the absence of an on board notation is therefore excused. The portion of Article 20(a)(ii) quoted by Capital One follows immediately after the shipped on board requirement language in Article 20(a)(ii) (see Exhibit 1 to the Chen Decl.), and must be interpreted in conjunction with that provision's express shipped on board requirement. Otherwise, Capital One's contention would render the shipped on board requirement (i.e., the requirement that the bill of lading indicate that the goods have been shipped on board a vessel by pre-printed wording or by an on board notation) under Article 20 meaningless in the case of any bill of lading bearing an issuance date (i.e., virtually any bill of lading).

16

The fact that the actual on board date (or shipment date) cannot be determined from the face of the Bill of Lading underlines the importance of the UCP 600's shipped on board requirement. As Taiwan Glass repeatedly informed Capital One, the shipping records from the shipping company (OOCL) indicated that the goods were not loaded on board a vessel until December 5, 2009, long after the November 30, 2009 deadline. See Tsai Decl., ¶¶ 18, 23, Exhibit 8. Although the Bill of Lading's issuance date (i.e., in the bottom right hand corner) is purportedly November 27, 2009, the issuance date of a received bill of lading (such as the Bill of Lading here), as explained above, cannot be deemed to be the shipment date. If that were the case, then the issuance date of the Bill of Lading in this case (i.e., November 27, 2009) would have been deemed to be the shipment date, which, in light of the shipping company's cargo tracking records, would have been wrong. Because the Bill of Lading does not contain an on board notation, it in effect concealed the fact that CVD failed to ship the goods by the November 30, 2009 deadline.

Thus, the shipped on board requirement under Article 20 is not merely a technical or academic issue with no great consequence. In this case, it should have functioned (but for Capital One's breach) as a protection for Taiwan Glass against precisely the risk the on board requirement is designed to address (i.e., the untimely shipment of goods). The Bill of Lading, on its face, failed to comply with the shipped on board requirement of Article 20. As such, Capital One should not have accepted it and relied on it as the basis for purportedly cancelling the Standby LC. Capital One's refusal to honor the Standby LC, therefore, was wrongful.

## CONCLUSION

For all of the foregoing reasons, Taiwan Glass respectfully submits that its motion for summary judgment should be granted in all respects, and otherwise respectfully requests that the Court grant such further relief as it deems just and appropriate.


Dated: New York, New York
      January 28, 2011


                    ALLEGAERT BERGER & VOGEL LLP


                    By: _____
                        Christopher Allegaert (callegaert@abv.com)
                        Michael Vogel (mvogel@abv.com)
                        Howard Chen (hchen@abv.com)
                        111 Broadway, 20th Floor
                        New York, NY 10006
                        (212) 571-0550


                        Attorneys for Defendant-Counterclaimant
                        Taiwan Glass Industrial Corporation