UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

CVD EQUIPMENT CORPORATION,           :     Civil Action No.:  10 CV 0573

                                              (RJH) (RLE)

               Plaintiff,        :

      -against-              :

TAIWAN GLASS INDUSTRIAL          :
CORPORATION, and MIZUHO
CORPORATE BANK, LTD.,           :

               Defendants.     :

------------------------------------------------------------x

TAIWAN GLASS INDUSTRIAL          :
CORPORATION,

                              :

           Counterclaim Plaintiff,

                              :

      -against-              :

CAPITAL ONE, N.A.,             :

           Counterclaim Defendant.

------------------------------------------------------------x

MEMORANDUM OF LAW OF CAPITAL ONE, N.A.
IN OPPOSITION TO TAIWAN GLASS INDUSTRIAL CORPORATION'S
<u>MOTION FOR SUMMARY JUDGMENT</u>

Paul A. Straus
J. Emmett Murphy
Paul B. Maslo
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222

Counsel for Counterclaim Defendant
Capital One, N.A.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ......................................................................................................... 2

  The Standby LOC and Conditions for Cancellation ................................................................. 2

  CVD Satisfies the Cancellation Conditions .............................................................................. 4

  Taiwan Demands Payment After the Standby LOC is Cancelled ............................................. 4

  Taiwan's Allegations in the Counterclaim ................................................................................ 5

ARGUMENT ............................................................................................................................. 6

TAIWAN'S MOTION FOR SUMMARY JUDGMENT SHOULD BE  DENIED BECAUSE
THE STANDBY LOC WAS CANCELLED BEFORE TAIWAN MADE ITS DEMAND FOR
PAYMENT ................................................................................................................................. 6

  A. Standard on this Motion for Summary Judgment ................................................................ 6

  B. The Standby LOC Was Properly Cancelled Under Its Express Terms Before Taiwan Made
  a Demand for Payment.............................................................................................................. 6

  C. Article 20 of the UCP Does Not Apply to the Cancellation Conditions of the Standby LOC
  and Does Not Trump the Parties' Express, Agreed-Upon Requirements for Cancellation of the
  Standby LOC ............................................................................................................................ 8

  D. CVD Submitted an "On Board" Bill of Lading Before Taiwan Made a Demand for
  Payment................................................................................................................................... 11

  E. Taiwan's Unsubstantiated Allegations of Fraud by CVD are Irrelevant and at Most Raise
  Issues of Fact that Defeat its Motion ...................................................................................... 14

CONCLUSION........................................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*3COM Corp. v. Banco de Brasil, S.A.*,
   171 F.3d 739 (2d Cir. 1999)...............................................................................................11

*3COM Corp. v. Banco de Brasil, S.A.*,
   2 F. Supp. 2d 452 (S.D.N.Y. 1998) ......................................................................................7

*Air China Ltd. v. Li*,
   No. 07 Civ. 11128 (LTS)(DFE), 2008 WL 754450 (S.D.N.Y. Mar. 17, 2008) .....................10

*Alaska Textile Co. v. Chase Manhattan Bank, N.A.*,
   982 F.2d 813 (2d Cir. 1992)...............................................................................................11

*Blonder & Co. v. Citibank, N.A.*,
   808 N.Y.S.2d 214 (1st Dep't 2006) ....................................................................................11

*Continental Ins. Co. v. Atl. Cas. Ins. Co.*,
   603 F.3d 169 (2d Cir. 2010)...............................................................................................11

*Cooperative Agricole Groupement De Producteurs Bovins De L'ouest v. Banesto
Banking Corp.*,
   No. 86 Civ. 8921 (PKL), 1989 WL 82454 (S.D.N.Y. July 19, 1989) ...............................7, 14

*Feehan v. Feehan*,
   No. 09 Civ. 7016 (DAB), 2010 WL 3734079 (S.D.N.Y. Sept. 22, 2010).............................15

*First Commercial Bank v. Gotham Originals, Inc.*,
   64 N.Y.2d 287 (1985) .......................................................................................................14

*In re Dana Corp.*,
   574 F.3d 129 (2d Cir. 2009)...............................................................................................14

*In re Lipper Holdings, LLC*,
   766 N.Y.S.2d 561 (1st Dep't 2003) ....................................................................................10

*Marino Industries Corp. v. Chase Manhattan Bank, N.A.*,
   686 F.2d 112 (2d Cir. 1982).................................................................................................7

*Mattera v. JPMorgan Chase Corp.*,
   No. 08 Civ. 04040 (RJH), 2010 WL 3785576 (S.D.N.Y. Sep. 30, 2010) ..............................6

*MRM Sec. Sys., Inc. v. Citibank, N.A.*,
   No. 96 Civ. 3721 (KMW), 1997 WL 198074 (S.D.N.Y. Apr. 23, 1997)..............................12

*Mut. Exp. Corp. v. Westpac Banking Corp.*,
   983 F.2d 420 (2d Cir. 1993)...........................................................................................8, 13

*Noboa v. MSC Crociere S.P.A.*,
   No. 08 Civ. 2896 (PKL), 2009 WL 1227451 (S.D.N.Y. May 5, 2009)....................................10

*Robalen, Inc. v. Generale De Banque S.A.*,
   No. 97 Civ. 0087, 1999 WL 688301 (S.D.N.Y. Sept. 3, 1999)...............................................11

*Todi Exps. v. Amrav Sportswear Inc.*,
   No. 95 Civ. 6701 (BSJ), 1997 WL 61063 (S.D.N.Y. Feb. 13, 1997)...........................7, 12, 13

*Tuthill v. Union Sav. Bank*,
   561 N.Y.S.2d 286 (2d Dep't 1990) .....................................................................................12

*Weyant v. Okst*,
   101 F.3d 845 (2d Cir. 1996 .................................................................................................15

## RULES

Fed. R. Civ. P. 56 ...................................................................................................................13

## OTHER AUTHORITIES

Commentary on UCP 600: Article-by-Article Analysis by the UCP 600 Drafting Group ............9

ICC Uniform Customs and Practice for Documentary Credits (2007 Revision)..........................10

Counterclaim defendant Capital One, N.A. ("Capital One") submits this memorandum of law in opposition to the motion for summary judgment submitted by Taiwan Glass Industrial Corporation ("Taiwan").

## PRELIMINARY STATEMENT

Capital One properly refused to honor Taiwan's presentation under the standby letter of credit ("Standby LOC") because it had been cancelled by its own express terms before Taiwan was even permitted to make a presentation for payment.  Taiwan's attempt to circumvent the unambiguous terms of the Standby LOC, by arguing that the bill of lading CVD submitted for cancellation was required to bear an "on board" indication, should be rejected for at least two reasons:

First, there is no such requirement in the Standby LOC.  The plain language of the document itself, which is annexed to the Counterclaim, defeats Taiwan's effort to read this requirement into the Standby LOC.  Although the Standby LOC sets forth a number of express requirements for the bill of lading required for cancellation, it does not require that it bear an "on board" indication.  While Taiwan attempts to impose this requirement by citing Article 20 of the ICC Uniform Customs and Practice for Documentary Credits ("UCP"),[1] the UCP itself makes clear that the requirement only applies to documents submitted as part of a presentation made by a beneficiary.  The bill of lading at issue was indisputably not part of a presentation, but rather was submitted in support of a request for cancellation made by an applicant.  In fact, treating the cancellation request as a presentation would render any number of UCP provisions nonsensical. Taiwan's strained effort to read additional terms into the Standby LOC should be rejected.

---

[1]   A copy of the cited portions of the UCP is annexed as Exhibit A to the Declaration of J. Emmett Murphy, dated February 18, 2011 ("Murphy Decl.").

Second, even if UCP Article 20 were to be stretched beyond its terms and made to apply to a cancellation request, the Counterclaim would still fail because it is undisputed that CVD did submit a revised bill of lading that contained an "on board" indication before Taiwan was even permitted to demand payment under the Standby LOC.  In fact, Taiwan's Counterclaim itself alleges that CVD submitted a bill of lading "purporting to have shipped the Equipment to Taiwan Glass," which is what it claims was required under UCP Article 20.  Counterclaim. ¶ 65. In other words, it is undisputed that before Taiwan made its demand, CVD submitted a bill of lading that did exactly what Taiwan claims it was required to do.  Taiwan's repeated assertions that the bill of lading was inaccurate is utterly irrelevant because, as Taiwan admits (and as the law is clear), Capital One was entitled to rely on the face of the document.

Taiwan's claim should be recognized for what it is:  An ill-conceived, last-minute attempt to drag Capital One into the underlying contract dispute between Taiwan and CVD.  Regardless of the merits of the underlying dispute, Capital One properly refused to honor Taiwan's post-cancellation demand on the Standby LOC.  The Court should reject its attempt to distort the plain text of the Standby LOC.  Taiwan's motion for summary judgment should be denied, and its claim against Capital One should be dismissed with prejudice.[2]

## STATEMENT OF FACTS

### The Standby LOC and Conditions for Cancellation

Taiwan's claim against Capital One is based on the Standby LOC, which was issued by Capital One in connection with an underlying agreement between CVD and Taiwan dated August 29, 2008 (the "Underlying Agreement").  The Underlying Agreement is annexed to the Murphy Declaration as Exhibit B.  In the Underlying Agreement, Taiwan agreed to purchase

---

[2]   Capital One's motion to dismiss Taiwan's Counterclaim, filed on January 28, 2011, is currently being briefed by the parties.

certain equipment (the "Equipment") to be designed and manufactured by CVD.   Murphy Decl.

Ex. B.   Regarding the Standby LOC, the Underlying Agreement provides for a "30% payment

against Seller issuing a Standby letter of Credit, [which] expires with shipment."   Murphy Decl.

Ex. B at 3.

Capital One issued the Standby LOC on October 9, 2008 addressed to Mizuho, Taiwan's

bank.  Declaration of Kurian T. Kurian, dated February 18, 2011 ("Kurian Decl.") ¶ 5 and Ex. A.

Section 6A sets out the "Documents Required" to be presented for payment under the Standby

LOC.  Kurian Decl. ¶ 7 and Ex. A.  These documents were to be presented by Mizuho, acting as

the advising bank for Taiwan as beneficiary.  The earliest that Taiwan was permitted to make a

presentation for payment under the Standby LOC was after January 1, 2010.  Kurian Decl. ¶ 7

and Ex. A § 7A.

The Standby LOC also included a separate section of "Additional Conditions."    Kurian

Decl. ¶ 8 and Ex. A § 7A.  This section included a cancellation clause which provided, in part:

> This letter of credit will be canceled upon . . .  copy of an original bill of lading
> submitted by CVD Equipment Corporation issued to the order of Taiwan Glass
> Ind. Corp. 261 Sec 3, Nanking E. Rd. Taipei 10566, Taiwan dated not later than
> November 30, 2009 and indicating CVD Equipment Corporation as Shipper.

Kurian Decl. Ex. A. (emphasis added).[3]   Unlike the commercial letter of credit issued by

Mizuho on behalf of Taiwan (the "Mizuho LOC," Murphy Decl. Ex. C), the cancellation

provision of the Standby LOC did not require a "clean on board ocean bill of lading."  Cf.

Murphy Ex. C § 46A with Kurian ¶ 10 and Ex. A § 7A.  It did not require the bill of lading to

---

[3]   Other events that would trigger automatic cancellation under the provision were:  (i) the
passage of 15 days from its date, if $3,584,000 were not wired to CVD, (iii) Capital One's
honoring drawing requests aggregating the stated amount, (iv) the day on which CVD
received an authenticated message from Taiwan through Mizuho stating that CVD's
obligations under the contract were satisfied, and (v) the expiration date, January 21, 2010.
Kurian Decl. ¶ 9 and Ex. A § 7A.  The Standby LOC further provided that "The day on
which [Mizuho] deliver[s] this letter of credit to us for cancellation, this letter of credit shall
terminate and we shall no longer have any obligation hereunder."  Id.

state that the Equipment had been loaded on a vessel and did not require a particular date of shipment.  Kurian ¶ 10 and Ex. A § 7A.

**CVD Satisfies the Cancellation Conditions**

On December 2, 2009, CVD sent Capital One a letter requesting cancellation of the Standby LOC.  Kurian Decl. ¶ 11 and Ex. B.  It enclosed a bill of lading that met all the requirements of the cancellation provision:  It was an original bill of lading, submitted by CVD, issued to Taiwan at the required address, dated November 27, 2009, and indicating CVD as Shipper.   Kurian Decl. ¶ 11 and Ex. C.  The bill of lading purported to have shipped the Equipment to Taiwan.  Counterclaim ¶ 65.  Upon this submission, the Standby LOC was cancelled by its own express terms.  Kurian Decl. ¶ 11 and Ex. A § 7A.

On or about December 8, 2009, Capital One notified Mizuho (Taiwan's bank) that the Standby LOC had been cancelled based on the bill of lading CVD submitted to Capital One.  Kurian Decl. ¶ 12 and Ex. D.  Mizuho indicated that it disagreed with the cancellation because, it claimed, the bill of lading submitted by CVD was required to have an "on board" indication.  Kurian Decl. ¶ 13 and Ex. E.  Capital One explained that no such indication was required for this purpose.  Kurian Decl. ¶ 14 and Ex. F.  Nevertheless, on December 24, 2009, CVD submitted to Capital One another original bill of lading dated November 27, 2009 and stamped "CLEAN ON BOARD," which Capital One forwarded to Mizuho at CVD's request.  Kurian Decl. ¶ 15 and Ex. G.

**Taiwan Demands Payment After the Standby LOC is Cancelled**

On January 4, 2010, Taiwan made a demand for payment under the cancelled Standby LOC.   Kurian Decl. ¶ 17 and Ex. H.  Taiwan alleges that Capital One responded on or about January 7, stating that (as Taiwan was aware) the Standby LOC had been cancelled on or about December 9, 2009.   Kurian Decl. ¶ 18 and Ex. I.  Capital One also advised Taiwan that the

4

submission did not conform to the language of the Standby LOC. *Id.* Taiwan made another demand for payment under the cancelled Standby LOC on January 11, 2010, purporting to correct the non-conforming language. Kurian Decl. ¶ 19 and Ex. J. Capital One again responded that the Standby LOC had been cancelled upon CVD's submission of a complying bill of lading. Kurian Decl. ¶ 20 and Ex. K.

**Taiwan's Allegations in the Counterclaim**

Taiwan filed its original answer and counterclaim on April 15, 2010 and did not name Capital One as a party. Taiwan added Capital One for the first time in its Amended Counterclaim filed on August 31, 2010. The central allegation of Taiwan's Counterclaim concerns the Underlying Agreement, specifically that CVD failed "to design, manufacture and install the Equipment in accordance with the terms of the agreement." Counterclaim ¶ 69. Taiwan alleges that CVD shipped an incomplete and non-conforming system "so that it could have a pretext for cancelling the [Standby LOC]." Counterclaim ¶ 63.

Taiwan's sole claim against Capital One is that the cancellation of the Standby LOC was improper because the bill of lading submitted by CVD failed to contain an indication that the goods had been shipped "on board" a named vessel.[4] Counterclaim ¶ 57. As a result, Taiwan alleges, Capital One's refusal to honor the Standby LOC, based on the fact that it had been cancelled prior to Taiwan's demand, was improper. Counterclaim ¶ 95.

---

[4] There is no dispute that the vessel, the "Zim Moskva," is named in the "Export Carrier" box on the bill of lading. Kurian Decl. Ex. C. Taiwan's only alleged defect is that the bill of lading does not bear an indication that the equipment was "on board."

5

## ARGUMENT

### TAIWAN'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE THE STANDBY LOC WAS CANCELLED BEFORE TAIWAN MADE ITS DEMAND FOR PAYMENT

#### A.     Standard on this Motion for Summary Judgment

Summary judgment should only be granted when "the moving party shows that there is

no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law." *Mattera v. JPMorgan Chase Corp.*, No. 08 Civ. 04040 (RJH), 2010 WL 3785576, at *6

(S.D.N.Y. Sep. 30, 2010) (quoting Fed. R. Civ. P. 56(c); citing *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986)).  "In deciding whether there is a genuine issue of material fact as to an

element essential to a party's case, the court must examine the evidence in the light most

favorable to the party opposing the motion, and resolve ambiguities and draw reasonable

inferences against the moving party." *Id.* (internal quotation and citation omitted).  The burden

is on the moving party to demonstrate that no material issue of fact exists.  *Id.* (internal citation

omitted).

#### B.     The Standby LOC Was Cancelled By Its Express Terms Before Taiwan Made a Demand for Payment.

The Standby LOC provides that it "will be cancelled" upon the occurrence of the earliest

of five events, one of which is satisfied when CVD submits a bill of lading.[5]   Kurian Decl. ¶ 8

and Ex. A § 7A.  The Standby LOC sets forth exactly what the bill of lading was required to

include to trigger cancellation: (1) a copy of an original bill of lading; (2) submitted by CVD; (3)

issued to the order of Taiwan; (4) dated not later than November 30, 2009; and (5) indicating

---

[5]   As discussed in more detail below, Taiwan repeatedly misrepresents that the Standby LOC provides that it "may be cancelled" upon the earliest of the events set forth (Counterclaim ¶ 54; Taiwan SJ Br. at 3) (emphasis added), apparently trying to avoid the automatic effect of the cancellation provision ("will be cancelled").   Kurian Decl. ¶ 8 and Ex. A § 7A (emphasis added).

CVD as Shipper.  *Id.*  The Standby LOC imposed no other requirements for cancellation pursuant to item (ii).  *Id.*

The bill of lading submitted by CVD to Capital One on December 2, 2009 strictly complied with each of the terms in the cancellation clause.  It was an original bill of lading, submitted by CVD, issued to Taiwan at the required address, dated November 27, 2009, and indicating CVD as Shipper.   Kurian Decl. ¶ 11 and Ex. C. The bill of lading purported to have shipped the Equipment to Taiwan. *Id.*

When CVD submitted the bill of lading, the Standby LOC was cancelled by its own express terms, and Capital One had no further obligation to pay.  *3COM Corp. v. Banco de Brasil, S.A.*, 2 F. Supp. 2d 452, 456 (S.D.N.Y. 1998) ("after the letter of credit has expired, the issuing bank no longer has the obligation to pay"); *Todi Exps. v. Amrav Sportswear Inc.*, No. 95 Civ. 6701 (BSJ), 1997 WL 61063, at *4 (S.D.N.Y. Feb. 13, 1997) (after the date of termination "the bank has no obligation to pay").  Whether or not CVD breached its obligations under the underlying agreement, as Taiwan argues in its motion and alleges in the Counterclaim, is irrelevant to Taiwan's claims against Capital One.  *Cooperative Agricole Groupement De Producteurs Bovins De L'ouest v. Banesto Banking Corp.*, No. 86 Civ. 8921 (PKL), 1989 WL 82454, at *21 (S.D.N.Y. July 19, 1989) ("When Banesto [the issuer] did not receive the proper documents prior to the expiry date, whether due to its customer's wrongful act or otherwise, its obligation to pay terminated.").[6]

Unlike the Mizuho LOC, the Standby LOC makes no mention of an "ocean" bill of lading and does not require an "on board" indication.  *Cf.*  Murphy Decl. Ex. C § 46A ("CLEAN

_____

[6]  *Accord Marino Industries Corp. v. Chase Manhattan Bank, N.A.*, 686 F.2d 112, 115 (2d Cir. 1982) ("It is the complete separation between the underlying commercial transaction and the letter of credit that gives the letter its utility in financing transactions. . . . The bank's sole function is the financing; it is not concerned with or involved in the commercial transaction.").

ON BOARD OCEAN BILLS OF LADING") *with* Kurian Decl. ¶ 10 and Ex. A § 7A ("COPY OF AN ORIGINAL BILL OF LADING").  If Taiwan wanted to require an "ocean" or "on board" bill of lading to trigger cancellation, it was up to Taiwan to insist that the language reflect this. *See Mut. Exp. Corp. v. Westpac Banking Corp.*, 983 F.2d 420, 423 (2d Cir. 1993) ("The beneficiary must inspect the letter of credit and is responsible for any negligent failure to discover that the credit does not achieve the desired commercial ends."). The beneficiary's duty to inspect the letter of credit is important because "[t]he beneficiary is in the best position to determine whether a letter of credit meets the needs of the underlying commercial transaction and to request any necessary changes." *Id.* (internal quotations and citations omitted).  Taiwan of course never did request such a change to the Standby LOC.  Kurian Decl. ¶¶ 4-6.

Accordingly, the Standby LOC was cancelled before Taiwan's demand, and as a matter of law Capital One was obligated not to pay.  Taiwan's motion for summary judgment should be denied.

> **C.      Article 20 of the UCP Does Not Apply to the Cancellation Conditions of the Standby LOC and Does Not Trump the Parties' Express, Agreed-Upon Requirements for Cancellation of the Standby LOC.**

Taiwan attempts to avoid the express and unambiguous terms of the Standby LOC by arguing that the bill of lading submitted by CVD for purposes of cancellation was required to satisfy UCP Article 20.  Beginning with the uncontroversial point that "[t]he Standby LC expressly incorporates the UCP as the governing rules," Taiwan asks the court to simply assume that Article 20's "on board" requirement applies to the cancellation provision of the Standby LOC.  Taiwan Mem. In Supp. Summ. J. 10.  But the requirements of Article 20 (as well as the other transport document provisions in Articles 19 through 25) apply exclusively to documents presented by a <u>beneficiary</u> or its agent as part of a <u>presentation</u> seeking payment.  They are wholly inapplicable to documents provided by an <u>applicant</u> to satisfy a <u>cancellation</u> provision.

Taiwan's effort to insert Article 20's clearly inapplicable requirements is yet another attempt to impose obligations on Capital One that are simply not contained in the Standby LOC.

Article 20 applies only where a letter of credit "requires presentation of a bill of lading covering transport by sea from one port to another port." Commentary on UCP 600 (Article 20) at 77 (emphasis added) (a copy of the cited portions of the Commentary is annexed as Murphy Decl. Ex. D).[7] Because a "presentation" is made to obtain payment under a letter of credit, it can only be made by the beneficiary or someone acting on its behalf:

> The term "Presenter" has been introduced into UCP 600 to better define the party that actually makes a presentation of documents to the bank and to reference the party that presents the documents. The presenter may be either the beneficiary of the documentary credit, another bank or another party acting on behalf of the beneficiary.

Commentary on UCP 600 (Article 2) at 19.

CVD was the applicant of the Standby LOC, not the beneficiary. CVD therefore could not be a "Presenter" as to the Standby LOC, and its submission of the bill of lading for purposes of cancelling the Standby LOC could never have been a "presentation" subject to Article 20. Indeed, Taiwan acknowledges that only it, and not CVD, could have made a presentation under the Standby LOC. See Taiwan's Mem. In Supp. Summ. J. 3 (defining "Presentation Documents" as "documents required to be presented for drawing under the Standby LC").

This is not an academic or hyper-technical distinction. Taiwan's attempt to treat CVD's cancellation request as a "presentation" subject to Article 20 would render any number of UCP provisions nonsensical. For example, Articles 15 and 16 set out, among other things, requirements for "complying presentations." Article 15 provides that when a bank is presented with a "complying presentation" under Article 20 (or one of the other transport document

---

[7] Taiwan also relies on the UCP Official Commentary in interpreting Article 20. See Taiwan's Mem. In Supp. Summ. J. 15.

articles, Articles 19-25), it has no option but to "honour" the credit – *i.e.*, pay.  UCP 600 Article 15(a).  That provision would make no sense if CVD's cancellation request were a presentation, because under no circumstances would it have resulted in payment.  Even more absurd would be the result under UCP Article 16(b), which provides that "[w]hen an issuing bank determines that a presentation does not comply, it may in its sole judgment approach the <u>applicant</u> for a waiver of the discrepancies."  UCP 600 Article 16(b) (emphasis added).  In other words, if Article 20 applied, CVD itself would have had the right to waive any discrepancies in its own cancellation request.  Such a nonsensical interpretation should be rejected.  *Noboa v. MSC Crociere S.P.A.*, No. 08 Civ. 2896 (PKL), 2009 WL 1227451, at *5 (S.D.N.Y.  May 5, 2009) ("This Court is not persuaded by plaintiffs' arguments, which attempt through nonsensical reasoning to create the appearance of ambiguity where none exists.");  *Air China Ltd. v. Li*, No. 07 Civ. 11128 (LTS)(DFE), 2008 WL 754450, at *2 (S.D.N.Y. Mar. 17, 2008) (rejecting interpretation of agreement that was "nonsensical in light of the clear language") (internal citation omitted);  *In re Lipper Holdings, LLC*, 766 N.Y.S.2d 561, 562 (1st Dep't 2003) ("A contract should not be interpreted to produce a result that is absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties.") (internal citations omitted).[8]

In fact, the UCP is silent on what documents may be provided in order to trigger a cancellation provision.  It merely provides that a credit cannot be cancelled "without the agreement of the issuing bank, the confirming bank, if any, and the beneficiary."  Article 10 (a).  In other words, it was left to the parties to determine the conditions required for cancellation, including the form of any required documents.  And, as discussed above, that is exactly what they did.  The parties set out specific requirements that were indisputably satisfied by CVD's

---

[8] While Capital One asserts that Capital One's telexes referred to Article 20 in disputing Mizuho's assertion that the bill of lading failed to comply, nowhere did Capital One ever concede that Article 20 applied to the cancellation provisions.  *See* Kurian Decl. ¶ 14.

cancellation request.  The Court need make no further inquiry.  "[I]f an agreement is complete, clear and unambiguous on its face, it must be enforced according to the plain meaning of its terms." *Continental Ins. Co. v. Atl. Cas. Ins. Co.*, 603 F.3d 169, 180 (2d Cir. 2010).

Accordingly, Article 20 does not apply to the cancellation clause of the Standby LOC, and should not be interpreted to include terms that Taiwan wishes it had bargained for, but did not.[9]

### D.  CVD Submitted an "On Board" Bill of Lading Before Taiwan Made a Demand for Payment

No creative interpretation of the Standby LOC or the UCP can overcome the undisputed, dispositive fact that CVD did provide Capital One with a revised bill of lading dated November 27, 2009, which was stamped "CLEAN ON BOARD."  Kurian Decl. ¶ 15 and Ex. G.[10]  This means that even if the Court were to credit Taiwan's argument that Article 20 applies – which it does not – the cancellation clause of the Standby LOC was still indisputably satisfied over a

---

[9]  Taiwan Glass has not cited a single case applying Article 20 to a bill of lading required as a condition for cancellation.  For instance, *Robalen, Inc. v. Generale De Banque S.A.*, No. 97 Civ. 0087, 1999 WL 688301 (S.D.N.Y. Sept. 3, 1999) involved a bill of lading required as part of a presentation required for payment.  Moreover, the court held that the "on board" language was required "where an LC requires that an 'on board' bill of lading be presented to the bank."  1999 WL 688301, at *4. But unlike the Mizuho LOC, the Standby LOC did not expressly require an "on board" bill of lading.  The other cases Taiwan cites relating the applicability of the UCP are similarly uncontroversial and unhelpful to Taiwan's argument.  *See 3COM Corp. v. Banco de Brasil, S.A.*, 171 F.3d 739 (2d Cir. 1999) (UCP's "complete and precise" guidance applies to a notice of non-renewal); *Alaska Textile Co. v. Chase Manhattan Bank, N.A.*, 982 F.2d 813 (2d Cir. 1992) (upholding dismissal of wrongful dishonor claim because the bank rejected a presentation within a "reasonable time," as required by the UCP);  *Blonder & Co. v. Citibank, N.A.*, 808 N.Y.S.2d 214 (1st Dep't 2006) (upholding dismissal of wrongful honor claim because presentation substantially complied with letter of credit, despite alleged fraud by seller in providing documents).

[10]  The second bill of lading is also consistent with Taiwan's own allegations, which concede that CVD "submit[ed] a bill of lading purporting to have shipped the Equipment to Taiwan," intending to "induce Capital One Bank to cancel" the Standby LOC.  Counterclaim ¶ 65 (emphasis added).  *See also* Counterclaim ¶¶ 81-82 ("CVD knowingly made false representations that it had shipped the Equipment to Taiwan," which "induce[d] Capital One Bank to cancel the CVD L/C.").

week before January 2, the earliest date Taiwan would have even been permitted to make a presentation for payment under the Standby LOC, and nearly two weeks before Taiwan actually made its demand on January 4.  Taiwan simply cannot dispute that Capital One could not have honored Taiwan's presentation without itself violating the Standby LOC, which provided that it "will be cancelled" upon the submission of the specified bill of lading.  *E.g., MRM Sec. Sys., Inc. v. Citibank, N.A.*, No. 96 Civ. 3721 (KMW), 1997 WL 198074, at *2 (S.D.N.Y. Apr. 23, 1997) (dismissing wrongful dishonor claim where letter of credit had terminated before presentation); *Tuthill v. Union Sav. Bank*, 561 N.Y.S.2d 286, 287 (2d Dep't 1990) (granting summary judgment dismissing claim for wrongful dishonor where plaintiff made an "untimely presentation").

Taiwan's attempt to ignore this second bill of lading, stating in a footnote that Capital One "never mentioned it in its correspondence"  (Taiwan's Mem. In Supp. Summ. J. 7, n.4) cannot save its claim.  The effect of the second bill of lading is automatic ("will be cancelled") and for the purposes of Taiwan's motion, insurmountable.  Although Capital One did not believe it needed to rely on the second bill of lading (nor does it now, for the reasons stated above), its effectiveness does not depend on whether Capital One relied on it at the time.  Nor can Taiwan argue that Capital One is precluded from citing it.  The cancelled Standby LOC is a "nullity," and courts refuse to estop parties from relying on "such incurable defects."  *Todi Exports v. Amrav Sportswear Inc.*, No. 95 Civ. 6701 (BSJ), 1997 WL 61063, at *6 (S.D.N.Y. Feb. 13, 1997).

Taiwan should also not be permitted to rewrite the Standby LOC to eliminate the automatic effect of the bill of lading.  In a pattern difficult to ignore, Taiwan repeatedly misstates the language of the cancellation clause to imply that Capital One was free not to cancel when provided with a bill of lading that met the cancellation provision's requirements.  While the Standby LOC provides that it "will be cancelled" upon the submission of a bill of lading, Taiwan

repeatedly states that the Standby LOC provides that it "may be cancelled" upon the earliest of the events set forth. *See* Counterclaim ¶ 54;  Taiwan's Mem. In Supp. Summ. J. 3;  Taiwan's Rule 56.1 statement  ¶ 10 ("The Standby LC further provides that it could be cancelled upon" receipt of the bill of lading) (emphasis added).  Strict compliance with a letter of credit's terms – including its cancellation provisions – "prevents imposition of an obligation upon the bank that it did not undertake and avoids jeopardizing the bank's right to indemnity from its customer." *Todi Exps.*, 1997 WL 61063, at *4.

This second bill of lading also renders meaningless Taiwan's complaint that it was denied the "protection" that an "on board" stamp would have provided Taiwan's Mem. In Supp. Summ. J. 17.  Taiwan contends that because the bill of lading did not contain an "on board' notation, it in effect "concealed the fact that CVD failed to ship the goods by the November 30, 2009 deadline."  Taiwan S.J. Br. at 17.  Of course, the second bill of lading provided the exact information Taiwan complains it was deprived of.  And in any event, Taiwan ignores that under the Standby LOC, Taiwan was not entitled to have the Equipment shipped by November 30, 2009. There is no such requirement anywhere in the Standby LOC.  While the Mizuho LOC expressly provided for a "Latest Date of Shipment" (Mizuho LOC section 44C), the only requirement in the Standby LOC is that the bill of lading be "dated not later than November 30, 2009." Kurian Decl. ¶ 8 and Ex. A § 7A (emphasis added).  There is no dispute that the bill of lading was dated November 27, 2009.  Taiwan cannot read terms into the Standby LOC by referring to another letter of credit. *Mut. Exp. Corp. v. Wetpac Banking Corp.*, 983 F.2d 420, 423 (2d Cir. 1993) ("[L]etters of credit must be interpreted on their face, independent of other contracts and the underlying transaction.").

**E.      Taiwan's Unsubstantiated Allegations of Fraud by CVD are Irrelevant and at Most Raise Issues of Fact that Defeat its Motion**

Taiwan also makes much of a supposed discrepancy between the bill of lading and the records of CVD's shipping company. Taiwan's Mem. In Supp. Summ. J. 5, 17. But it is black letter law that Capital One was entitled to rely on the bill of lading notwithstanding Taiwan's unsubstantiated allegations of fraud. *See Cooperative Agricole Groupement De Producteurs Bovins De L'ouest v. Banesto Banking Corp.*, No. 86 Civ. 8921 (PKL), 1989 WL 82454, at *21 (S.D.N.Y. July 19, 1989) ("[T]he issuing bank's duties are solely ministerial. . . . [T]he bank has no duty to investigate an alleged underlying fraud.") (internal citations omitted); *First Commercial Bank v. Gotham Originals, Inc.*, 64 N.Y.2d 287, 295 (1985) ("[W]hen a required document . . . is forged or fraudulent or there is fraud in the transaction, an issuer acting in good faith . . . is not required to[] refuse to honor a draft under a letter of credit when the documents presented appear on their face to comply with the terms of the letter of credit.").[11]

In any event, to the extent that Taiwan's motion depends on discrepancies in the shipping company's records and the supposed "improbability" that the goods were timely shipped, or on the "credibility" of a CVD employee whose affidavit is cited, it is certainly not appropriate for summary judgment. *See, e.g., In re Dana Corp.*, 574 F.3d 129, 152 (2d Cir. 2009) ("Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate.") (reversing district

---

[11] Capital One would have the same right to rely on the face of the documents if, as Taiwan claims, CVD's submission of the bill of lading were a "presentation" for purposes of the UCC or the UCP. U.C.C. § 5-109(a)(2) ("If a presentation is made that appears on its face strictly to comply with the terms and conditions of the letter of credit, but a required document is forged or materially fraudulent, or honor of the presentation would facilitate a material fraud . . . [t]he issuer, acting in good faith, may honor or dishonor the presentation."); UCP 600 Article 34 ("A bank assumes no liability or responsibility for the form, sufficiency, accuracy, genuineness, falsification or legal effect of any document, or for the general or particular conditions stipulated in a document or superimposed thereon.").

court) (internal quotation omitted); *Weyant v. Okst*, 101 F.3d 845, 854-855 (2d Cir. 1996) ("Given the principle that, in ruling on a motion for summary judgment, the district court is . . . to eschew credibility assessments, we disagree with the district court and conclude that summary judgment was inappropriate." (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); Fed.R.Civ.P. 56(e) Advisory Committee Note (1963))); *Feehan v. Feehan*, No. 09 Civ. 7016 (DAB), 2010 WL 3734079, at *2 (S.D.N.Y. Sept. 22, 2010) (holding that it is inappropriate to grant summary judgment based on probability determinations which are not dispositive).

## CONCLUSION

For the foregoing reasons, and for the reasons asserted in Capital One's motion to dismiss, Taiwan's motion for summary judgment should be denied in all respects, and Taiwan's Counterclaim should be dismissed as to Capital One with prejudice.

Dated:  February 18, 2011

KING & SPALDING LLP

By:

Paul A. Straus
J. Emmett Murphy
Paul B. Maslo

1185 Avenue of the Americas
New York, NY  10036
Tel:  (212) 556-2100
Fax:  (212) 556-2222

Attorneys for Capital One, N.A.