UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                       :

CVD EQUIPMENT CORPORATION,         :

                      Plaintiff,    :       10 CIV 0573 (RJH) (RLE)

                               :

         -against-            :

                               :

TAIWAN GLASS INDUSTRIAL            :
CORPORATION, and MIZUHO CORPORATE :
BANK, LTD.,                      :

                             :

                   Defendants.  :
-----------------------------------------------------------------x
                             :

TAIWAN GLASS INDUSTRIAL            :
CORPORATION,                   :

                             :

          Counterclaim Plaintiff,  :

                             :

         -against-            :

                             :

CAPITAL ONE, N.A.,              :

                             :

         Counterclaim Defendant.  :
-----------------------------------------------------------------x

## TAIWAN GLASS INDUSTRIAL CORPORATION'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST COUNTERCLAIM DEFENDANT CAPITAL ONE, N.A.

ALLEGAERT BERGER & VOGEL LLP
111 Broadway, 20th Floor
New York, New York 10006
(212) 571-0550

*Attorneys for Defendant-Counterclaimant*
*Taiwan Glass Industrial Corporation*

Table of Contents

Table of Authorities ................................................................................................ ii

ARGUMENT .......................................................................................................... 1

I.      There Are No Disputes as to Any Material Facts ...................................... 1

II.     Taiwan Glass is Entitled to Judgment as a Matter of Law ........................ 4

        (a)     The Bill of Lading Does Not Comply with Article 20 of UCP 600 .............. 4

        (b)     Article 20 of UCP 600 Applies .......................................................... 5

        (c)     Capital One Cannot Now Rely on the Second Bill of Lading ............. 7

CONCLUSION ....................................................................................................... 10

Page(s)

Table of Authorities

Cases

Alaska Textile Co. v. Chase Manhattan Bank, N.A.,
982 F.2d 813 (2d Cir. 1992)......................................................................... 8

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986).................................................................................... 4

Ocean Rig ASA v. Safra Nat'l Bank of New York,
73 F. Supp. 2d 193 (S.D.N.Y. 1999)........................................................... 1

Prutscher v. Fidelity Int'l Bank,
502 F. Supp. 535 (S.D.N.Y. 1980) ............................................................ 10

Semetex Corp. v. UBAF Arab Am. Bank,
853 F. Supp. 759 (S.D.N.Y. 1994) ............................................................. 5

Todi Exports v. Amrav Sportswear Inc.,
No. 95 Civ. 6701, 1997 WL 61063 (S.D.N.Y. Feb. 13, 1997) .................... 8


Other Authorities

Fed. R. Civ. P. 56(a) .................................................................................... 1

Fed. R. Civ. P. 56(c)(1)................................................................................ 4

Local Civil Rule 56.1(b) .............................................................................. 4

New York Uniform Commercial Code, § 5-108(c) com. 3 ........................... 8

New York Uniform Commercial Code, § 5-108(d)........................................ 8

UCP 600, Article 16...................................................................................... 8

UCP 600, Article 20...............................................................................*passim*

UCP 600, Article 20(a)(ii) ........................................................................... 6

Defendant-Counterclaimant Taiwan Glass[1] respectfully submits this Reply Memorandum of Law in further support of its motion for summary judgment against Counterclaim Defendant Capital One.

## ARGUMENT

Taiwan Glass's motion for summary judgment against Capital One should be granted because: (1) Capital One has not raised any disputed material fact; and (2) Taiwan Glass has shown that it is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(a).[2]  As shown below, Capital One does not dispute the version of events described in Taiwan Glass's Statement of Undisputed Material Facts.  Furthermore, Capital One, which now has had two chances to respond to Taiwan Glass's arguments, has not provided any apposite authority to rebut Taiwan Glass's showing that the Standby LC was improperly cancelled.

**I.      There Are No Disputes as to Any Material Facts.**

In its "Response and Rule 56.1 Counterstatement to Taiwan Glass Industrial Corporation's Statement of Undisputed Facts" dated February 18, 2011 (the "COB Fact Response"), Capital One describes the same version of events as described by Taiwan Glass in its "Statement of Undisputed Material Facts" dated January 28, 2011 (the "TG Fact Statement").[3]

---

[1] Unless otherwise defined, all capitalized terms herein shall have the same meaning as in Taiwan Glass's previous memoranda -- the Memorandum of Law in Support of Taiwan Glass's Motion for Summary Judgment, dated January 28, 2011 ("TG SJ Mem.") and the Memorandum of Law in Opposition to Capital One's Motion to Dismiss Counterclaim, dated February 18, 2011 ("TG MTD Opp. Mem.").

[2] See also Ocean Rig ASA v. Safra Nat'l Bank of New York, 73 F. Supp. 2d 193, 197 (S.D.N.Y. 1999) ("Summary judgment is appropriate as there are no disputed issues of material fact and the issues can be decided as a matter of law").

[3] In brief, both the COB Fact Response and the TG Fact Statement describe the following series of events: (a) Capital One purported to cancel the Standby LC based on the (first) Bill of Lading; (b) Taiwan Glass disagreed with and objected to such purported cancellation; (c) Capital One and Taiwan Glass argued over whether the (first) Bill of Lading complied with Article 20 of UCP 600; (d) Taiwan Glass attempted to draw down on the Standby LC; (e) Capital One refused to honor the draw down request because of an alleged discrepancy in Taiwan Glass's beneficiary statement and because of the purported cancellation of the Standby LC based on the (first) Bill of Lading; (f) Taiwan Glass attempted again to draw down on the Standby LC, this time submitting a revised

Although Capital One purports to dispute several paragraphs of the TG Fact Statement, such assertions do not reflect any disputes as to what actually happened, but rather are merely inappropriate attempts by Capital One to incorporate legal argument into a fact statement, or otherwise to create an illusion of the existence of disputed facts.  Thus, there are six paragraphs in the TG Fact Statement with which Capital One purports to dispute, none of which reflects any genuine dispute as to a material fact:

(1) <u>Paragraph 5</u>:  Taiwan Glass states in this paragraph that "On or about October 16, 2008, Taiwan [Glass] paid $3,564,000.00 to CVD", citing to Exhibit 2 of the Tsai Decl.  Capital One purports to dispute this paragraph, but provides no explanation other than citing to Exhibit 2 of the Tsai Decl.  Exhibit 2 is a transaction confirmation showing that $3,563,940.00 was received by Capital One from Mizuho on October 16, 2008.  Thus, it appears that Capital One "disputes" Paragraph 5 because (a) the amount shown in Exhibit 2 is not exactly $3,564,000.00; and (b) CVD's name does not directly appear on the confirmation.  Yet, such a "dispute" does not reflect any genuine factual issue in dispute, given that CVD itself has already admitted to receiving $3,563,940.00 from Taiwan Glass.  <u>See</u> CVD's response to Mizuho's Statement of Material Undisputed Facts, ¶ 12.  This "dispute" merely reflects that Paragraph 5 did not take into account the $60 of transaction fees apparently deducted from the $3,564,000.00 paid, a "fact" that is immaterial to the issue at hand.

(2) <u>Paragraph 8</u>:  In this paragraph, Taiwan Glass describes, by quotation, the documents required for drawing under the Standby LC.  Capital One admits to the accuracy of the quotes but "disputes that the presentation of the documents described entitled Taiwan [Glass] to draw under the Standby LOC after it was cancelled".  COB Fact Response, ¶ 8.  This "dispute" is nothing more than an improper attempt to incorporate legal argument into a fact statement, and does not reflect a genuine factual issue in dispute.

(3) <u>Paragraph 10</u>:  Capital One disputes this paragraph because the paragraph states that the Standby LC "could be cancelled", rather than "will be cancelled", upon the earliest to occur of certain events specified in the Standby LC.  <u>Id.</u>, ¶ 10.  Taiwan Glass does <u>not</u> dispute that the Standby LC uses the phrase "will be cancelled", and Paragraph 10 does not purport to quote that part of the Standby LC containing the phrase "will be cancelled".  In any event, there is no genuine factual issue in dispute here, as the words of the Standby LC speak for themselves.[4]

---

beneficiary statement; and (g) Capital One again refused to honor the request, this time only because of the purported cancellation of the Standby LC based on the (first) Bill of Lading.

[4] Capital One makes much of the fact that Taiwan Glass, in describing the documents required for cancellation under the Standby LC, uses the words "may be cancelled" or "could be cancelled" instead of "will be cancelled".  Capital

(4) <u>Paragraph 15</u>:  Paragraph 15 states that the "Bill of Lading does not have an 'on board' notation".  Again, Capital One's "dispute" is an improper attempt to incorporate legal argument in a fact statement, arguing that "Taiwan Glass admits that the bill of lading indicates that the goods were 'shipped', which constitutes an 'on board' notation under the UCP".  Manifestly, whether the Bill of Lading complies with the requirements of UCP 600 is a question of law, not of fact.[5]  <u>Id.</u>, ¶ 15.

(5) <u>Paragraph 21</u>:  This paragraph states that "Taiwan Glass informed Capital One that the carrier's record indicated that the goods were not loaded on board until December 5, 2009".  It appears that Capital One "disputes" this paragraph because Taiwan Glass did not choose to quote from the telex communication in question, but rather paraphrased it.  Quoting from the telex communication in question, Capital One "admits that Mizuho's December 14, 2009 telex stated, among other things, that 'Beneficiary has checked with carrier (OOCL), the on board date is Dec. 05, 2009 which was not complied with your L/C terms and their contract'".  <u>Id.</u>, ¶ 21.  There is no genuine factual issue in dispute here, as both parties agree that Capital One was informed by Taiwan Glass that the shipping company's records indicated that the goods were not loaded on board a ship until December 5, 2009.

(6) <u>Paragraph 22</u>:  This paragraph states that "On January 4, 2010, Taiwan Glass requested payment of $3,564,000.00 under the Standby LC by presenting certain documents, including the Presentation Documents, to Capital One".  The term "Presentation Documents" was defined in Paragraph 8 of the TG Fact Statement as being those documents specified by the Standby LC for drawings thereunder.  Capital One "disputes" Paragraph 22, but provides no explanation other than citing to Exhibits 9 and 10 of the Tsai Declaration.  Exhibit 9 to the Tsai Decl. contains the documents submitted by Taiwan Glass to Capital One on January 4, 2010, in Taiwan Glass's first attempt to draw down the Standby LC.  Exhibit 10 is the telex communication from Capital One to Mizuho dishonoring the drawdown request.

Although Capital One should have explained what its "dispute" was (as the Court and Taiwan Glass should not be left guessing), it appears that Capital One "disputes" Paragraph 22 because Exhibit 9 of the Tsai Decl. differs from Exhibit H of the Declaration of Kurian T. Kurian in opposition to Taiwan Glass's summary judgment motion, dated February 18, 2011 (the "Kurian Decl.").  Exhibit H also purports to contain documents submitted by Taiwan Glass (via Mizuho) to Capital One in

---

One's Memorandum of Law in Opposition to Taiwan Glass's Motion for Summary Judgment ("COB SJ Opp. Mem.), p. 12.  This is obviously a red herring designed to divert attention away from the fact that Capital One has no answer to Taiwan Glass's arguments.  As noted, Taiwan Glass does <u>not</u> dispute that the Standby LC uses the words "will be cancelled", and Taiwan Glass is <u>not</u> arguing that the Standby LC's terms should be changed to "may be cancelled" or "could be cancelled".  Taiwan Glass's argument is simple and straightforward:  Capital One should not have cancelled the Standby LC because (for all the reasons already set forth in Taiwan Glass's memoranda) the Bill of Lading, being non-conforming to Article 20 of UCP 600, failed to comply with the terms of the Standby LC.

[5] In any event, as shown in Taiwan Glass's previous memoranda, Capital One's legal argument on this point is simply wrong, and Capital One cites <u>no</u> authority (either in its Counterstatement or elsewhere) for this proposition.

Taiwan Glass's first drawdown request.  Exhibit H differs from Exhibit 9 in that (as relevant here) Exhibit H contains OOCL's cargo tracking record, which Taiwan Glass in fact submitted to Capital One (along with the other documents) in its first drawdown request.  Taiwan Glass neglected to include the cargo tracking record in Exhibit 9 of the Tsai Decl.  Again, there is no material disputed fact here, as Taiwan Glass has always maintained, and Capital One has never disputed, that Taiwan Glass informed Capital One multiple times that OOCL's cargo tracking record indicated that the goods were not loaded on board a ship until December 5, 2009.

It is settled law that a non-moving party opposing a summary judgment motion "must set forth specific facts showing that there is a genuine issue for trial".  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . .").  As is evident from the discussion above, not only has Capital One not set forth any "specific facts showing that there is a genuine issue for trial", Capital One agrees with Taiwan Glass as to all the material facts relevant to this motion.[6]

## II.    Taiwan Glass is Entitled to Judgment as a Matter of Law.

Capital One has also failed completely to advance any legal arguments, supported by apposite authority, sufficient to rebut Taiwan Glass's showing that it is entitled to judgment as a matter of law.  Capital One's arguments are addressed below.

(a)    The Bill of Lading Does Not Comply with Article 20 of UCP 600.

It is notable that Capital One has failed yet again to address Taiwan Glass's arguments as to why the (first) Bill of Lading does not comply with Article 20, despite having had two opportunities to do so.  Capital One must now be deemed to have conceded the point.

---

[6] In addition to a response to Taiwan Glass's Statement of Undisputed Material Facts, Capital One also includes in the COB Fact Response a "Counterstatement", purporting to set forth the events relevant to this motion.  Under Local Civil Rule 56.1(b), however, such a "Counterstatement" is inappropriate unless it contains "*additional material facts* as to which it is contended that there exists a genuine issue to be tried" (emphasis in original).  The "Counterstatement" contains no "additional material facts as to which it is contended that there exists a genuine issue to be tried" (indeed, the "Counterstatement" largely mirrors the version of events stated by Taiwan Glass) and, as such, Taiwan Glass will not respond specifically to each paragraph of the "Counterstatement", other than to deny and dispute any purported statement of fact that inappropriately contains legal arguments or that contains distorted, incomplete or inaccurate descriptions or half-truths.  See, e.g., footnote 9 below.

(b)    Article 20 of UCP 600 Applies.

Given that the application of Article 20 will inevitably result in the invalidity of the Bill of Lading, Capital One seeks to avoid Article 20 at all costs, even at the risk of appearing absurd. Thus, Capital One concocts a fanciful argument that Article 20 does not apply to the cancellation provisions of the Standby LC based on a purported distinction between "presentation" for payment under a letter of credit and submission of documents for cancellation. Such a purported distinction is without any basis in law and has already been dealt with fully in Taiwan Glass's memorandum in opposition to Capital One's motion to dismiss, which is incorporated herein by reference.[7] See TG MTD Opp. Mem., pp. 3-25.

Capital One now argues that Taiwan Glass has not cited to any authority "applying Article 20 to a bill of lading required as a condition for cancellation", and attempts on this basis to distinguish several cases cited by Taiwan Glass in its memorandum in support of its motion for summary judgment. COB SJ Opp. Mem., p. 11, n. 9. However, those distinctions fail to undermine the central purpose for which those cases were cited. In particular, the cases (as well as the ICC Banking Commission Official Opinions) cited by Taiwan Glass were for the purpose of demonstrating how Article 20's "shipped on board" requirement is applied to a bill of lading and the distinction between a "received bill of lading" and a "shipped bill of lading", to which authorities Capital One has had no answer. See TG SJ Mem., pp. 10-17. In refuting Capital One's purported distinction between "presentation" for payment and "presentation" for

---

[7] One of Capital One's arguments is that if "Taiwan [Glass] wanted to require an 'ocean' or 'on board' bill of lading to trigger cancellation, it was up to Taiwan [Glass] to insist that the language reflect this". COB SJ Opp. Mem., p. 8. While Taiwan Glass has already dealt with this argument in its opposition to Capital One's motion to dismiss, it is notable that Capital One has now abandoned its reliance on Semetex Corp. v. UBAF Arab Am. Bank, 853 F. Supp. 759 (S.D.N.Y. 1994), which was originally cited by Capital One in its memorandum in support of its motion to dismiss (at p. 12). As already pointed out by Taiwan Glass (and apparently, though belatedly, realized by Capital One), Semetex is wholly inapplicable here because it is concerned with an air waybill and not a bill of lading evidencing sea shipment.

cancellation, and in establishing that Article 20 applies to the Bill of Lading, Taiwan Glass cited to numerous authorities, including, without limitation, the definitions of "presentation" and "presenter" and their commentary; the plain words of Article 20; as well as the other provisions of UCP 600.  See TG MTD Opp. Mem., pp. 5-14.  More importantly, even assuming, *arguendo*, that Capital One's purported distinction has merit, Article 20 still applies because, by the parties' course of dealing, it has already been incorporated into the parties' agreement, and Capital One cannot now disclaim the applicability of Article 20 without breaching that agreement.  Id., pp. 12-14.

Desperate to avoid the application of Article 20 at any cost, Capital One now makes the ludicrous argument that "[w]hile Capital One asserts that Capital One's telexes referred to Article 20 in disputing Mizuho's assertion that the bill of lading failed to comply, nowhere did Capital One ever concede that Article 20 applied to the cancellation provisions". COB SJ Opp. Mem., p. 10, n. 8.  As the telex communications unequivocally show, however, Capital One not only "referred" to Article 20, but accepted its applicability, relied on it, and argued that the Bill of Lading complied with it.[8]  See Tsai Decl., Exh. 6 (Capital One argues in its telex: "The bill of lading indicated that the merchandise was received by the carrier and was signed on behalf of the carrier.  The absence of an onboard notation is also covered in Article 20(a)(ii) quote the date of issuance of the bill of lading will be deemed to be the date of shipment unless the bill of lading contains an onboard notation unquote").

---

[8] Similarly, Capital One now relies on Taiwan Glass's use of the term "Presentation Documents" in the TG SJ Mem. as evidence that Taiwan Glass "acknowledges that only it, and not CVD, could have made a presentation under the Standby LOC".  COB SJ Opp. Mem., p. 9.  The use of the term "Presentation Documents" in summary judgment briefing is obviously an *ad hoc* term of convenience.  It takes a clearly unwarranted and desperate logical leap for Capital One to conclude, from Taiwan Glass's use of such an *ad hoc* term, that Taiwan Glass "acknowledges that only it, and not CVD, could have made a presentation under the Standby LOC".

(c)   <u>Capital One Cannot Now Rely on the Second Bill of Lading</u>.

Having no answer to the legal authorities conclusively showing that the (first) Bill of Lading was required to have an "on board" notation, Capital One now tries to "have its cake and eat it too" by arguing, incoherently, that: (i) it did not rely on, and did not need to rely on, the Second Bill of Lading when it purportedly cancelled the Standby LC in December of 2009; (ii) because of (i), it does not now rely on the Second Bill of Lading; and (iii) it now relies on the Second Bill of Lading.  <u>See</u> COB SJ Opp. Mem., pp. 12-15.

As an initial matter, since Capital One has unequivocally admitted that it did not rely on the Second Bill of Lading when it purportedly cancelled the Standby LC in December of 2009,[9] the only relevant legal question to be decided by the Court is whether the (first) Bill of Lading was conforming to Article 20 of UCP 600.[10]

Capital One tries to circumvent its own admission by arguing that Taiwan Glass cannot "argue that Capital One is precluded from citing [the Second Bill of Lading]", because the Standby LC "is a 'nullity', and courts refuse to estop parties from relying on 'such incurable defects'".  <u>Id.</u>, p. 12.  Such an argument makes no sense, as it presumes the conclusion which it

---

[9] Notwithstanding this unequivocal admission, Capital One continues to mislead the Court by omitting to state that the Second Bill of Lading was submitted by CVD for the purpose of seeking payment under the Commercial LC and not for cancelling the Standby LC, and that Capital One did not rely on the Second Bill of Lading in purportedly cancelling the Standby LC.  <u>See</u>, <u>e.g.</u>, COB SJ Opp. Mem., pp. 4, 5, 13-15; COB Counterstatement, ¶ 16 ("on December 24, 2009, CVD submitted to Capital One another original bill of lading dated November 27, 2009 and stamped 'CLEAN ON BOARD,' which Capital One forwarded to Mizuho at CVD's request"); COB Fact Response, ¶ 26 ("Capital One further states that the same January 11, 2010 telex acknowledges receipt of the revised bill of lading on December 24, 2009").  Paragraph 26 of the COB Fact Response is particularly misleading, seeming to imply that <u>Capital One</u> acknowledged receipt of the Second Bill of Lading for the purpose of cancelling the Standby LC.  The January 11, 2010 telex (Tsai Decl., Exh. 11) was from Mizuho to Capital One, in which Mizuho mentioned that CVD submitted the Second Bill of Lading and stated, <u>inter alia</u>, that in any event the Second Bill of Lading conflicts with the shipping company's cargo tracking record.  In its subsequent correspondence, Capital One never responded to this point, never mentioned the Second Bill of Lading at all, and continued to rely on the (first) Bill of Lading.  <u>See</u> Tsai Decl., ¶¶ 28-30, Exhs. 11, 13.

[10] For all the reasons already stated in Taiwan Glass's previous memoranda, the (first) Bill of Lading did not comply with Article 20 and Capital One wrongfully dishonored Taiwan Glass's payment requests by relying on the (first) Bill of Lading to purportedly cancel the Standby LC.

aims to establish, i.e., the Standby LC was cancelled and a "nullity" because it was cancelled and a "nullity".  In any event, Capital One's "incurable defects" argument (which, in effect, argues that Taiwan Glass cannot demonstrate detrimental reliance) flies in the face of established Second Circuit authority that Article 16 of UCP 600 is a "strict preclusion" rule, i.e., Article 16 operates to preclude an issuing bank from later relying on a ground of dishonor if such ground was not specifically stated in the initial notice of dishonor, "regardless of whether the beneficiary has demonstrated detrimental reliance".[11]  Alaska Textile Co. v. Chase Manhattan Bank, N.A., 982 F.2d 813, 823 (2d Cir. 1992); see also UCC § 5-108(c) com. 3 (Official Comment states that this section "substitutes a strict preclusion principle for the doctrines of waiver and estoppel that might otherwise apply under Section 1-103", and that the "virtue of the preclusion obligation adopted in this section is that it forecloses litigation about reliance and detriment").[12]

Finally, while continuing to insist that it is not relying on the Second Bill of Lading, Capital One argues that the Second Bill of Lading presents "credibility" issues that make summary judgment inappropriate.  See COB SJ Opp. Mem., pp. 14-15.  This is yet another red herring, as there is no "credibility" issue here.  The specific statement of Ms. Karen Hamburg of CVD relied upon by Taiwan Glass is that the goods were picked up by truck at CVD's facilities

---

[11] The case of Todi Exports v. Amrav Sportswear Inc., No. 95 Civ. 6701, 1997 WL 61063 (S.D.N.Y. Feb. 13, 1997), cited by Capital One, is wholly inapposite.  That case concerns the situation where the plaintiff beneficiary presented documents for payment after the expiry date of the letter of credit, a situation wholly inapplicable here, where there is no dispute that Taiwan Glass demanded payment (twice) before the expiry date of January 21, 2010, and where the dispute is whether the Standby LC was improperly cancelled.  Indeed, the situation described in Todi is covered by UCC § 5-108(d), which specifically excludes "fraud, forgery or expiration [of letter of credit]" from the requirement that the issuing bank must specify all defects in its notice of dishonor, i.e., the issuer may rely on expiration of the letter of credit at a later time as a ground of dishonor even though it did not specify such a ground in its initial notice of dishonor.

[12] Capital One argues that Taiwan Glass "ignores that under the Standby LOC, Taiwan [Glass] was not entitled to have the Equipment shipped by November 30, 2009.  There is no such requirement anywhere in the Standby LOC".  COB SJ Opp. Mem., p. 13 (emphasis in original).  Again, this argument makes no sense, as Taiwan Glass is not arguing that it was entitled to have the equipment shipped by November 30, 2009 under the terms of the Standby LC.  Rather, Taiwan Glass merely seeks to explain the purpose and importance of the "on board" date, the absence of which conceals the shipment date, which, as Capital One admits, was required to be November 30, 2009 under the Commercial LC.  See TG SJ Mem., pp. 13-17.

in Ronkonkoma on November 27, 2009. <u>See</u> TG SJ Mem., p. 15. Taiwan Glass does <u>not</u> dispute this statement; it is taken as true for the limited purpose of this motion.

Even if the Second Bill of Lading were allowed to be relied upon by Capital One (despite Capital One's insistence that it is not relying on the Second Bill of Lading), the Second Bill of Lading would still be of no help to Capital One, as it is obviously fraudulent and Capital One knew, and should have known, that it was fraudulent. Thus, the Second Bill of Lading is fraudulent because: (1) it is facially inconsistent with the (first) Bill of Lading (including the "on board" notation, different "ORIGINAL" stamp, and different signatures), even though both purport to be the same, original document; (2) the Second Bill of Lading's "on board" date of November 27, 2009 is in flat contradiction to the shipping company's cargo tracking record (which shows an on board date of December 5, 2009), and Capital One was informed by Taiwan Glass of the contents of the cargo tracking record even before the Second Bill of Lading was submitted by CVD (for payment under the Commercial LC); (3) the shipping company's cargo tracking record has never been, and is not, disputed by Capital One (or, for that matter, by CVD); (4) Capital One had a copy of the cargo tracking record and knew that the Second Bill of Lading's "on board" date contradicted it; and (5) Ms. Hamburg's statement that the goods were picked up at CVD's facilities in Ronkonkoma on November 27, 2009 (which is taken as true for purposes of this motion) shows that the Second Bill of Lading's purported "on board" date of November 27, 2009 is completely implausible, given that November 27 was a Friday over the Thanksgiving weekend, and Ronkonkoma is located near the eastern end of Long Island, a long way from the port in New Jersey.

Given that Capital One has not disputed (and therefore admits) the accuracy of the shipping company's cargo tracking record (let alone set forth any specific facts contesting its

accuracy),[13] given that Capital One has not disputed that it knew of the information in the cargo

tracking record (and indeed has a copy of it), given that Ms. Hamburg's statement is taken to be

true, and given that the Court may take judicial notice of the fact that November 27, 2009 was a

Friday over the Thanksgiving weekend and that Ronkonkoma is located near the eastern end of

Long Island, there can be no question that the Court may, and should, find that the Second Bill of

Lading was fraudulent and that Capital One should not be allowed to rely on it now.  See, e.g.,

Prutscher v. Fidelity Int'l Bank, 502 F. Supp. 535 (S.D.N.Y. 1980) (summary judgment granted

where on board date in bill of lading was shown to be false)

## CONCLUSION

For all of the foregoing reasons, Taiwan Glass respectfully submits that its motion

for summary judgment against Capital One be granted in its entirety, and otherwise respectfully

requests that the Court grant such further relief as it deems just and appropriate.


Dated: New York, New York
        February 25, 2011


                              ALLEGAERT BERGER & VOGEL LLP

                              By: _C. Allegaert/hc._
                                 Christopher Allegaert (callegaert@abv.com)
                                 Michael Vogel (mvogel@abv.com)
                                 Howard Chen  (hchen@abv.com)
                                 111 Broadway, 20th Floor
                                 New York, NY 10006
                                 (212) 571-0550

                              Attorneys for Defendant-Counterclaimant
                              Taiwan Glass Industrial Corporation

---

[13] Indeed, the shipping company (OOCL) is a not a party to this action and is otherwise independent from, and not affiliated with, any party in this action.  Unlike CVD, OOCL (which is a major international shipping company) has no incentive to falsify its own shipping records.