UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————————— x

CVD EQUIPMENT CORPORATION,                    :        Civil Action No.: 10 CV 0573
                                                                             (RJH) (RLE)
                 Plaintiff,                   :

           -against-                          :

TAIWAN GLASS INDUSTRIAL                       :
CORPORATION, and MIZUHO
CORPORATE BANK, LTD.,                         :

                 Defendants.                  :
                                                                                x
————————————————————————————— 
TAIWAN GLASS INDUSTRIAL                       :
CORPORATION,

                                              :
           Counterclaim Plaintiff,
                                              :
           -against-
                                              :
CAPITAL ONE, N.A.,
                                              :
           Counterclaim Defendant.
————————————————————————————— x

REPLY MEMORANDUM OF LAW OF CAPITAL ONE, N.A.
IN SUPPORT OF ITS MOTION TO DISMISS COUNTERCLAIM
OF TAIWAN GLASS INDUSTRIAL CORPORATION

                          Paul A. Straus
                          J. Emmett Murphy
                          Joshua Edgemon
                          Paul B. Maslo
                          KING & SPALDING LLP
                          1185 Avenue of the Americas
                          New York, New York 10036
                          Telephone:  (212) 556-2100
                          Facsimile:  (212) 556-2222

                          Counsel for Counterclaim Defendant
                          Capital One, N.A.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT............................................................................................................................2

POINT I ................................................................................................................................2

TAIWAN'S ARGUMENT THAT THE BILL OF LADING REQUIRED AN "ON BOARD"
STAMP IGNORES AND DISTORTS THE TEXT OF THE UCP ...............................................2

   A. Taiwan Distorts the Plain Text of the UCP and Ignores the Official Commentary Its
      Own Brief Relies On. ..............................................................................................2

   B. Capital One Is Not Precluded from Arguing that Article 20 Does Not Apply ......................5

POINT II...............................................................................................................................6

TAIWAN SHOULD NOT BE PERMITTED TO UPEND WELL-SETTLED LAW, WHICH
ENTITLES CAPITAL ONE TO RELY ON THE FACE OF THE DOCUMENTS .....................6

   A. Article 16 of the UCP Does Not Preclude Capital One from Relying on the
      Second Bill of Lading.............................................................................................7

   B. Article 14(d) of the UCP Does Not Preclude Capital One from Relying on the
      Second Bill of Lading, Because There Is No Conflict. ..........................................8

   C. Plaintiffs' Unsupported Allegations of Fraud Do Not Preclude Capital One From Relying
      on the Second Bill of Lading. ................................................................................9

      1. Taiwan Turns the Law of New York on Its Head. .............................................9

      2. Taiwan Does Not Allege Fraud. .....................................................................11

      3. Taiwan Cannot Avoid the Effect of Section 5-109 By Arguing that Capital One Acted
         in "Bad Faith" by Enforcing the Cancellation Provision...................................11

CONCLUSION........................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

CASES

*Alaska Textile Co. v. Chase Manhattan Bank, N.A.*,
   982 F.2d 813 (2d Cir. 1992) ................................................................................................8

*Brenntag Int'l Chems., Inc. v. Norddeutsche Landesbank GZ*,
   70 F. Supp. 2d 399 (S.D.N.Y. 1999) ..................................................................................12

*Blonder & Co. v. Citibank, N.A.*,
   28 A.D.3d 180, 808 N.Y.S.2d 214 (1st Dep't 2006). .............................................................5

*Chambers v. Time-Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) ................................................................................................6

*Cohen v. Local 338-RWDSU/UFCW*,
   No. 08 Civ. 01151(RJH)(FM), 2010 WL 3199695 (S.D.N.Y. Aug. 12, 2010)
   (Holwell, J.) ..........................................................................................................................6

*Cooperative Agricole Groupement De Producteurs Bovins De L'ouest v. Banesto
Banking Corp.*,
   No. 86 Civ. 8921(PKL), 1989 WL 82454 (S.D.N.Y. July 19, 1989) .....................................10

*Corporacion de Mercadeo Agricola v. Mellon Bank Intern.*,
   608 F.2d 43 (2d Cir. 1979) ..................................................................................................8

*Creaciones Con Idea, S.A. de C.V. v. MashreqBank PSC*,
   51 F. Supp. 2d 423 (S.D.N.Y. 1999) ...................................................................................8

*E & H Partners v. Broadway Nat'l Bank*,
   39 F. Supp. 2d 275 (S.D.N.Y. 1998) ...................................................................................9

*First Commercial Bank v. Gotham Originals, Inc.*,
   475 N.E.2d 125564 N.Y.2d 287 (1985)................................................................................10

*Gen. Elec. Capital Commercial Auto. Fin., Inc. v. Spartan Motors, Ltd.*,
   246 A.D.2d 41, 675 N.Y.S.2d 626 (2d Dep't 1998)...............................................................5

*Hamilton Bank, N.A. v. Kookmin Bank*,
   245 F.3d 82 (2d Cir. 2001) ..................................................................................................8

*Kosovich v. Metro Homes, LLC*,
   No. 09-cv-6992 (JSR), 2009 U.S. DIST. LEXIS 121390 (S.D.N.Y. Dec. 29, 2009)...............9

*LeaseAmerica Corp. v. Norwest Bank Duluth, N.A.*,
  940 F.2d 345 (8th Cir. 1991) .......................................................................................................8

*Merchants Corp. of America v. Chase Manhattan Bank, N.A.*,
  1968 WL 9180 (N.Y.Sup., Mar 05, 1968).............................................................................12

*OEI v. Citibank, N.A.*,
  957 F. Supp. 492 (S.D.N.Y. 1997) .........................................................................................9

*Old Colony Trust Co. v. Lawyers' Title and Trust Co.*,
  297 F. 152 (2d Cir. 1924), cert. denied, 265 U.S. 585, 44 S.Ct. 459, 68 L.Ed. 1192
  (1924)......................................................................................................................................11

*Prutscher v. Fidelity Intern. Bank*,
  502 F. Supp. 535 (S.D.N.Y. 1980) .......................................................................................12

*Scarsdale Nat'l Bank & Trust Co. v. Toronto-Dominion Bank*,
  533 F. Supp. 378 (S.D.N.Y. 1982) .......................................................................................12

*Semetex Corp. v. UBAF Arab Am. Bank & Trust Co.*,
  681 F. Supp. 759 (S.D.N.Y. 1994) .........................................................................................4

*Spain v. Deutsche Bank*,
  No. 08 Civ.10809 (LBS), 2009 WL 3073349 (S.D.N.Y. Sept. 18, 2009)................................6

*Todi Exports v. Amrav Sportswear Inc.*,
  No. 95 Civ. 6701 (BSJ), 1997 WL 61063 (S.D.N.Y. Feb. 13, 1997)...................................7, 8

*United Bank, Ltd. v. Cambridge Sporting Goods Corp.*,
  41 N.Y.2d 254, 360 N.E.2d 943 (1976).................................................................................12

*Voest-Alpine Int'l Corp. v. Chase Manhattan Bank, N.A.*,
  707 F.2d 680 (2d Cir. 1983) ..................................................................................................5

*Well Luck Co. v. F.C. Gerlach & Co.*,
  421 F. Supp. 2d 533 (E.D.N.Y. 2005) ....................................................................................5

**STATUTES**

NYUCC § 5-109 (McKinney 2011) .............................................................................................10

**RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................6

**OTHER AUTHORITIES**

Banking Commission Opinion, 2000/01, R455...............................................................................5

Commentary on UCP 600: Article-by-Article Analysis by the UCP 600 Drafting Group .........3, 6

ICC Uniform Customs and Practice for Documentary Credits (2007 Revision)  .........2, 4, 6, 9, 10

Counterclaim defendant Capital One, N.A. ("Capital One") submits this reply memorandum of law in support of its motion to dismiss the Counterclaim of Taiwan Glass Industrial Corporation ("Taiwan").[1]

## PRELIMINARY STATEMENT

In its Moving Brief, Capital One demonstrated that the sole basis for Taiwan's claim for wrongful dishonor — that the bill of lading triggering cancellation was required to have an "on board" stamp — is contradicted by the plain terms of the UCP and the UCP Drafting Group's Official Commentary.  Capital One also demonstrated that the debate over the "on board" requirement is largely academic, because Capital One was provided with an "on board" bill of lading well before Taiwan was even permitted to make a presentation for payment.

Taiwan responds to the first point by urging the Court to ignore the UCP Articles and Official Commentary that prove Capital One's point and by positing interpretations of those provisions that render them meaningless.  In response to the second point, Taiwan does not dispute that the second bill of lading satisfied every requirement (real or imagined) of the Standby LOC and the UCP.  Instead, it alleges that the second bill of lading was fraudulent, based on documents and facts other than the bill of lading on which Capital One is entitled to rely.  Taiwan's argument attempts nothing less than to rewrite the law of letters of credit and standard banking practices — making the issuing bank an arbiter of the parties' performance on the underlying contract and responsible for weighing the slightest of opposing inferences.

The Court should reject Taiwan's attempt to evade the plain meaning of the Standby LOC and relevant law, as well as Taiwan's attempt to impose unfounded duties on Capital One.

---

[1]   Capitalized terms not otherwise defined herein have the meanings ascribed to them in Capital One's Memorandum of Law in Support of Motion to Dismiss Counterclaim ("Moving Br." or "Moving Brief").

Capital One's motion should be granted, and Taiwan's claim for wrongful dishonor should be dismissed.

## ARGUMENT

### POINT I

### TAIWAN'S ARGUMENT THAT THE BILL OF LADING REQUIRED AN "ON BOARD" STAMP IGNORES AND DISTORTS THE TEXT OF THE UCP

In its Moving Brief, Capital One showed that UCP Article 20 cannot be invoked to add terms to the unequivocal cancellation provision in the Standby LOC. If the language of the UCP Articles and the Official Commentary are to be given any effect, they establish (1) that Article 20 only applies to presentations, and (2) that the submission of a bill of lading submitted under a cancellation clause cannot be a presentation. Moving Br. at 9-12. Taiwan's claim that Capital One "has not cited a single authority" in support of its argument rings hollow, because Taiwan's opposition actually asks the Court to either ignore the authorities cited by Capital One in its motion, or to accept interpretations of them that render them meaningless or even nonsensical.

### A.   Taiwan Distorts the Plain Text of the UCP and Ignores the Official Commentary Its Own Brief Relies On.

Taiwan's contention that Article 20 applies to the cancellation clause of the Standby LOC (Taiwan Opp. at 4) fundamentally misapprehends the nature of Capital One's argument. While Taiwan lambastes Capital One for arguing that the Standby LOC "adopts the UCP to the extent applicable" (Taiwan Opp. at 4), that is exactly what Article 1 of the UCP says: "The [UCP] are rules that apply to any documentary credit . . . (including, to the extent to which they may be applicable, any standby letter of credit)." UCP 600, Art. 1 (emphasis added). The question, then, is not whether the UCP applies to the Standby LOC in general — it does — but whether a bill of lading submitted in support of the cancellation conditions of section 7(A) — which sets

2

out its own express requirements — must meet Article 20's requirements for a <u>presentation</u>.  As Capital One demonstrated in its Moving Brief (at 9 -12), it does not.

    <u>First</u>, Capital One showed that Article 20 only applies to a presentation, evidenced by, among other things, the Official Commentary's clarification that a "presenter" is limited to "the beneficiary . . . another bank or another party acting on behalf of the beneficiary."  Moving Br. at 10 (quoting *Commentary on UCP 600*, Art. 2 at 19).  Taiwan argues that because the UCP Drafting Group wrote "may be," instead of "must be," the Drafting Group meant that a "presenter" could be the beneficiary, another bank acting on behalf of the beneficiary, or <u>anyone else</u>.  Taiwan Opp. at 6.  Taiwan's interpretation would render the definition meaningless, and it blatantly ignores the Drafting Group's stated intention "to <u>better</u> <u>define</u> the party that actually makes a presentation."  *Commentary on UCP 600*, Art. 2 at 19 (emphasis added).

    Amazingly, Taiwan next asks the Court simply to ignore the Official Commentary altogether (Taiwan Opp. at 6), even though Taiwan itself cites to the Commentary no less than four times in the same brief to support its own interpretations of the UCP, as well as in its motion for summary judgment.[2]  In fact, there is no basis for ignoring the Official Commentary, which the Drafting Group states is intended "to suggest the way the wording in UCP 600 should be understood and applied."  *Commentary on UCP 600*, Intro at p. 6.

    <u>Second</u>, Capital One demonstrated that Taiwan's effort to shoehorn Article 20 into the cancellation conditions would create nonsensical results in Article 15 (which, if Taiwan's interpretation were accepted, would require Capital One to <u>pay</u> on the credit if the bill of lading met the requirements for <u>cancellation</u>) and Article 16 (which would permit CVD to waive any discrepancies in its own cancellation request).  *See* Moving Br. at 10-11.  Taiwan's only response

_____

[2] Taiwan Opp. at 7 (interpreting Art. 14), at 10 (Art. 2), at 16 (Art. 16), at 19 (Art. 14).  Taiwan also cites the commentary prominently in its recently filed motion for summary judgment  *See* Taiwan S.J. Mem. at 15.

to these nonsensical results is that "[t]he possibility that not all articles of UCP 600 necessarily apply to a standby letter of credit in all circumstances is neither new nor problematic [and] is specifically recognized in UCP 600 itself." Taiwan Opp. at 9 (citing UCP 600, Art. 1). This of course is true, but it is also an almost comical about-face when compared to Taiwan's argument regarding Article 20, which Taiwan argues must be shoehorned into the Standby LOC terms no matter what violence it causes to the rest of the UCP. *See* Taiwan Opp. at 4. And while Article 20 does not conflict at all with Capital One's argument, there is <u>no</u> way to square Articles 15 and 16 with the notion that CVD's cancellation request was a presentation.

    <u>Third</u>, Capital One showed that Taiwan's strained interpretation ignored the difference between the Mizuho LOC (which requires a "CLEAN ON BOARD OCEAN BILL OF LADING") and the Standby LOC (which only requires an "original bill of lading"), and that it is the beneficiary's responsibility to ensure the language of the letter of credit accurately reflects the parties' intentions. Moving Br. at 11-12. Taiwan attempts to sweep away this critical distinction by arguing that Article 20 does not require the bill of lading to be named an "ocean" or "on board" bill of lading. Taiwan Opp. at 11. As a threshold matter, both this argument and Taiwan Glass's attempt to distinguish *Semetex Corp. v. UBAF Arab Am. Bank & Trust Co.*, 681 F. Supp. 759 (S.D.N.Y. 1994), make the circular assumption that Article 20 applies to the cancellation conditions in the first place. It does not. Moving Br. at 9-12. Taiwan's contention also misses the point. Capital One's argument is not addressed to how the bill of lading is named, but the fact that the language of the Standby LOC cancellation provision itself — unlike the language of the Mizuho LOC — does not require an "ocean" or "on board" bill of lading.

Counterclaim Ex. C.  The Mizuho LOC shows that these parties were capable of specifying an "on board" bill of lading when they wanted to require one.[3]

### B.   Capital One Is Not Precluded from Arguing that Article 20 Does Not Apply.

Taiwan offers a smorgasbord of theories why CVD should be "precluded" from arguing that Article 20 does not apply to the cancellation conditions based on the parties' post-cancellation electronic correspondence.  Taiwan Opp. at 12-13.  None of these theories prevents Capital One from making its argument.  Although they are not clearly developed, all Taiwan's arguments require at least one critical element: that Capital One engaged in some course of dealing, performance or statement that is inconsistent with its position that the Standby LOC was cancelled.  Taiwan cannot meet that element.  At no time did Capital One act inconsistently with its position that the Standby LOC was cancelled.  Nothing in the telexes Taiwan cites conceded at the bill of lading required for cancellation required an "on board" stamp.  And in no event did any of them suggest that the Standby LOC had not been cancelled.[4]

---

[3]   *See* Moving Br. at 12; *Blonder & Co. v. Citibank, N.A.*, cited by Taiwan, actually supports Capital One's position.  28 A.D.3d 180, 184, 808 N.Y.S.2d 214, 218 (1st Dep't 2006).  It held that a bill of lading did not need to name a consignee where "there was no such requirement in the letter of credit." *Id.* (emphasis added).  Contrary to Taiwan's description (Taiwan Opp. at 12), the court did not hold that the bill of lading at issue was required to bear a "shipped on board" stamp.  The bill of lading in that case did contain an "on board" stamp, and the issue was whether an inconsistency between the date in that stamp and a typed date prevented the bank from honoring the credit.  The court held that it did not, dismissing the claim against the bank. *Blonder*, 28 A.D.3d at 184, 808 N.Y.S.2d at 218.  In any event, the letter of credit in that case required the bill of lading to "evidenc[e] . . . shipment" (*id.*), which is not true of the Standby Letter of Credit.  Similarly, ICC Banking Commission Opinion, 2000/01, R455 did not require the bill of lading to comply with Article 20; it only opined that the date the bill of lading was issued would be deemed the date of shipment. Chen Summ. J. Decl. Exh. 4 at 2.2.

[4]   This distinguishes the cases Taiwan cites.  *E.g.*, *Voest-Alpine Int'l Corp. v. Chase Manhattan Bank, N.A.*, 707 F.2d 680, 685 (2d Cir. 1983) (possible waiver where, despite a "glaring discrepancy," confirming bank advised that documents conformed to letter of credit); *Well Luck Co. v. F.C. Gerlach & Co.*, 421 F. Supp. 2d 533, 540 (E.D.N.Y. 2005) (actual course of dealing "unambiguously" established parties' intention to limit liability); *Gen. Elec. Capital Commercial Auto. Fin., Inc. v. Spartan Motors, Ltd.*, 246 A.D.2d 41, 52, 675 N.Y.S.2d 626, 634 (2d Dep't 1998) (parties' course of dealing diverged in practice from the language of their contract).

The only UCP authority Taiwan relies on actually supports Capital One's position. UCP Article 1 provides that the application of the rules may only be "expressly modified or excluded by the credit." UCP 600, Art. 1 (emphasis added). In other words, it is only the language of the credit that may modify the rules, not extrinsic correspondence. *See Commentary on UCP 600*, Art. 1 ("[A] modification or exclusion should be expressly stated in the documentary credit itself.") (emphasis added).[5]   Taiwan's effort to preclude Capital One from presenting its argument should be rejected.

## POINT II

### TAIWAN SHOULD NOT BE PERMITTED TO UPEND WELL-SETTLED LAW, WHICH ENTITLES CAPITAL ONE TO RELY ON THE FACE OF THE DOCUMENTS

Taiwan does not dispute that the second bill of lading met every condition Taiwan believes was required for cancellation.[6] Taiwan's only response is to cite irrelevant "preclusion" principles and, in a desperate last ditch effort to save its claim, make assertions regarding fraud and bad faith that are not even alleged in its Counterclaim.

---

[5]   None of the cases Taiwan cites (Taiwan Opp. at 13-14) holds that a party's correspondence may render an inapplicable UCP article applicable to a particular letter of credit provision.

[6]   Contrary to Taiwan's contention, the Court can consider the second bill of lading on this motion to dismiss. Taiwan alleges in its Counterclaim that CVD "submit[ed] a bill of lading purporting to have shipped the Equipment to Taiwan," intending to "induce Capital One Bank to cancel" the Standby LOC. Counterclaim ¶ 65 (emphasis added). In any event, a court resolving a motion to dismiss under Rule 12(b)(6) "may consider . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Cohen v. Local 338-RWDSU/UFCW*, No. 08 Civ. 01151(RJH)(FM), 2010 WL 3199695, at *4 (S.D.N.Y. Aug. 12, 2010) (Holwell, J.) (quoting *Chambers v. Time-Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)) (internal quotations omitted, alterations in original). Taiwan cannot avoid the legal effect of the revised bill of lading by pleading around it in its Counterclaim.   "Well settled law in the Second Circuit permits a court to consider integral documents . . . that are not mentioned in or attached to a complaint, particularly when a complaint deliberately does not refer to those documents in an attempt to avoid the information in the integral documents." *Spain v. Deutsche Bank*, No. 08 Civ.10809 (LBS), 2009 WL 3073349, at *3 n.3 (S.D.N.Y. Sept. 18, 2009) (considering documents "neither cited in nor attached to the Complaint" on motion to dismiss).

A.    **Article 16 of the UCP Does Not Preclude Capital One from Relying on the Second Bill of Lading.**

Taiwan argues that Capital One is "precluded" from relying on the second bill of lading by UCP Article 16, which sets out rules for banks presented with non-complying presentations. Taiwan Opp. at 15-17.  Specifically, Taiwan relies on Article 16(c), which requires that banks give notice of the specific discrepancies in the presentation, and Article 16(f), which provides that a failure to act in accordance with the rest of the article will preclude a bank "from claiming that the documents do not constitute a complying presentation."  Taiwan argues that because Capital One did not refer to the second bill of lading as a basis for not honoring the cancelled Standby LOC, it should not be permitted to rely on it now.  Taiwan Opp. at 17.  Taiwan is wrong for at least two reasons.

First, Capital One's notices complied with Article 16.  In response to Taiwan's first presentation for payment, Capital One responded by telex dated January 6, 2010 that the Standby LOC had "expired."  On January 11, 2010,  Mizuho responded on behalf of CVD, objecting to the cancellation based on <u>both</u> bills of lading and arguing that the second bill of lading did not comply because of some unspecified "evidence from carrier."   Counterclaim ¶¶ 58-61; Declaration of T.M. Tsai, dated January 27, 2011 (docket no. 66) Ex. 11.  Capital One confirmed again in two subsequent telexes that the Standby LOC had been cancelled.  Taiwan was clearly on notice, and indeed contemplated in its telex, that the second bill of lading was a basis for cancellation, and has cited no authority requiring any more specificity than the notices Capital One provided.

Second, UCP Article 16 does not preclude a bank from relying on an incurable defect such as cancellation.  "In cases dealing with <u>timing</u> discrepancies — i.e. expired letters of credit — courts have refused to apply UCP estoppel in the face of such incurable defects."  *Todi*

*Exports v. Amrav Sportswear Inc.*, No. 95 Civ. 6701 (BSJ), 1997 WL 61063, at \*6 (S.D.N.Y. Feb. 13, 1997).  The reason is clear.  Article 16 is intended to ensure that beneficiaries have an opportunity to cure any discrepancies, if possible.  The expiration or cancellation of a letter of credit renders it a "nullity" and is incurable.  *Todi*, 1997 WL 61063, at \*6.

Thus, the courts recognize the distinction between a discrepancy in a <u>presentation</u> that is possible for the beneficiary to cure — which will estop a bank if it fails to provide notice — and an incurable event such as the expiration or cancellation of the letter of credit, which does not. *See, e.g.*, *Corporacion de Mercadeo Agricola v. Mellon Bank Intern.*, 608 F.2d 43 (2d Cir. 1979) (estoppel did not apply because the signatory's lack of authority was an incurable defect).[7] Taiwan has not cited a single case applying Article 16 to preclude a party from relying on the cancellation of a letter of credit.[8]

### B.   Article 14(d) of the UCP Does Not Preclude Capital One from Relying on the Second Bill of Lading, Because There Is No Conflict.

Taiwan's desperate reliance on Article 14(d) of the UCP does not salvage its claim. While Article 14(d) provides that data should not "conflict" with other data in certain documents, none of Taiwan's three supposed inconsistencies presents a conflict.  The fact that the second bill of lading contains an "on board" stamp does not make it "conflict" with the first.  Nothing in the

---

[7]   *Accord LeaseAmerica Corp. v. Norwest Bank Duluth, N.A.*,  940 F.2d 345, 350-51 (8th Cir. 1991) (purpose of UCP preclusion rule is "to give a beneficiary a chance to cure a curable defect, not to require the issuing bank to honor an untimely presentment") (rejecting preclusion argument because presentation "was untimely and incurable").

[8]   To the contrary, the cases cited by Taiwan only prove Capital One's point.  Although Taiwan cites *Alaska Textile Co. v. Chase Manhattan Bank, N.A.*, 982 F.2d 813 (2d Cir. 1992) for the point that preclusion under the UCP does not require detrimental reliance, it tellingly cuts off the first part of the quoted sentence, which makes clear that it only applies to "documents' nonconformity."  This case has nothing to do with nonconformity of Taiwan's documents.  The other cases cited by Taiwan deal <u>solely</u> with curable facial discrepancies in a documentary presentation.  *Hamilton Bank, N.A. v. Kooknin Bank*, 245 F.3d 82, 92 (2d Cir. 2001) (documents discrepant because they were submitted without "required authenticated telex"); *Creaciones Con Idea, S.A. de C.V. v. MashreqBank PSC*, 51 F. Supp. 2d 423 (S.D.N.Y. 1999) (bank's failure to specify discrepancies in documents may have deprived beneficiary chance to cure).

first bill of lading indicated that the goods had <u>not</u> shipped on board; it simply lacked a stamp.
The fact that the two bills have different "original" stamps and different signatures also is not a
conflict.  As Article 14(d) provides, the data in a particular document "<u>need</u> <u>not</u> <u>be</u> <u>identical</u> <u>to</u>"
the data in that document or others.  UCP 600, Art. 14(d) (emphasis added).  Minor deviations
such as this, in what is clearly a substitute original, are exactly the kind of thing the UCP
excluded.  *E.g., E & H Partners v. Broadway Nat'l Bank*, 39 F. Supp. 2d 275, 283 (S.D.N.Y.
1998) ("While the bills of lading and invoices in question may not contain the identical
description of goods, it cannot be said that they are inconsistent with one another given that the
item numbers and quantity numbers match.").[9]

## C.     Plaintiffs' Unsupported Allegations of Fraud Do Not Preclude Capital One From Relying on the Second Bill of Lading.

As a threshold matter, no fraud is alleged with respect to the second bill of lading; in fact,
Taiwan denies even mentioning the second bill of lading in its Counterclaim.  Taiwan Opp. at
15.  Taiwan cannot defeat a motion to dismiss by making allegations for the first time in its
opposition.[10]

### 1.     Taiwan Turns the Law of New York on Its Head.

Taiwan argues that Capital One is precluded from relying on the second bill of lading
under New York law because, Taiwan now alleges, it was "false and fraudulent."  Taiwan Opp.
at 21.  Taiwan turns New York law on its head.  Citing UCC section 5-109, Taiwan argues that
"New York law is clear that Capital One, as the issuing bank, may not turn a willfully blind eye

---

[9]    In stark contrast, the documents in *OEI* contained clear discrepancies from the letter of credit,
named different shippers, and variously stated that the same goods had been shipped by sea or by
land.  *OEI v. Citibank, N.A.*, 957 F. Supp. 492, (S.D.N.Y. 1997).  None of those is true here.
Taiwan does not even dispute that the second bill of lading, on its face, complies with the
cancellation provision.

[10]   "It is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion
to dismiss."  *Kosovich v. Metro Homes, LLC*, No. 09-cv-6992 (JSR), 2009 U.S. DIST. LEXIS
121390, *14-15 (S.D.N.Y. Dec. 29, 2009)

to the (facially obvious) fraudulent nature of the Second Bill of Lading." Taiwan Opp. at 21.

Rather than imposing a duty on Capital One, section 5-109 actually protects it:

> If a presentation is made that appears on its face strictly to comply with the terms and conditions of the letter of credit, but a required document is forged or materially fraudulent, or honor of the presentation would facilitate a material fraud by the beneficiary on the issuer or applicant . . . the issuer, acting in good faith, may honor or dishonor the presentation. . . .

N.Y. U.C.C. § 5-109 (McKinney 2011) (emphasis added). As the Official Comment to section 5-109 explains, this section "makes clear that the issuer may honor in the face of the applicant's claim of fraud . . . . Merely because the issuer has a right to dishonor and to defend that dishonor by showing forgery or material fraud does not mean it has a duty to the applicant to dishonor." N.Y. U.C.C. § 5-109, official cmt. 2 (emphasis added).

This is consistent with longstanding law of letters of credit. An issuing bank has no duty to investigate alleged fraud or to "ascertain whether documents are false or whether the goods were delivered, only that the documents substantially comply with the letter of credit on their face." *Blonder*, 28 A.D.3d at 184, 808 N.Y.S.2d at 218.[11]

Accordingly, Capital One was entitled to rely on the second bill of lading, notwithstanding Taiwan's current unsubstantiated allegations of fraud.[12]

---

[11]   *Accord Cooperative Agricole Groupement De Producteurs Bovins De L'ouest v. Banesto Banking Corp.*, No. 86 Civ. 8921(PKL), 1989 WL 82454, at *21 (S.D.N.Y. July 19, 1989) ("[T]he bank has no duty to investigate an alleged underlying fraud.").

[12]   *See Cooperative*, 1989 WL 82454, at *21 ("[T]he issuing bank's duties are solely ministerial. . . . [T]he bank has no duty to investigate an alleged underlying fraud.") (internal citations omitted); *First Commercial Bank v. Gotham Originals, Inc.*, 475 N.E.2d 1255, 1259, 64 N.Y.2d 287, 295 (1985) ("[W]hen a required document . . . is forged or fraudulent or there is fraud in the transaction, an issuer acting in good faith . . . is not required to [] refuse to honor a draft under a letter of credit."); UCP 600, Art. 34 ("A bank assumes no liability or responsibility for the form, sufficiency, accuracy, genuineness, falsification or legal effect of any document, or for the general or particular conditions stipulated in a document or superimposed thereon.").

**2. Taiwan Does Not Allege Fraud.**

In any event, Taiwan does not set forth any facts that would have prevented Capital One Bank from relying on the second bill of lading. First, Taiwan relies on the October 20, 2010 declaration of CVD employee Karen Hamburg. Taiwan Opp. at 20. This cannot show knowledge of fraud by CVD in January 2010, nine months earlier. Second, Taiwan points to the supposed "inconsistencies" between the first and second bills of lading. As explained at pp. 8-9 above, this is a red herring because the two bills of lading do not conflict. The fact that CVD submitted a second bill of lading in an effort to correct a supposed defect is not evidence of fraud, and Taiwan cites no authority to the contrary. Third, Taiwan cites a "shipping company cargo tracking record" supposedly indicating that the Equipment was loaded on December 5, 2009. Taiwan does not allege that these were even provided to Capital One. And even if they were, and even if they did clearly contradict the second bill of lading, Taiwan fails to explain why the shipping records should be afforded any greater weight than the second bill of lading itself, let alone how it is conclusive evidence of fraud.

**3.    Taiwan Cannot Avoid the Effect of Section 5-109 By Arguing that Capital One Acted in "Bad Faith" by Enforcing the Cancellation Provision.**

Finally, Taiwan cannot end-run the clear protection offered by section 5-109 by claiming Capital One's reliance on the bill of lading was evidence of "bad faith." Taiwan has not cited a single case holding that an issuing bank acted in bad faith by enforcing a cancellation provision. To the contrary, all Taiwan's cases recognize the statutory rule that, absent an injunction, the issuing bank may choose to honor or dishonor a facially compliant presentation, even where there is fraud. *See, e.g., Old Colony Trust Co. v. Lawyers' Title and Trust Co.*, 297 F. 152 (2d Cir. 1924) (holding bank not <u>required</u> to honor a draft presented where required bill of lading found to be forged or fraudulent) (emphasis added), *cert. denied*, 265 U.S. 585, 44 S.Ct. 459, 68

11

L.Ed. 1192 (1924); *Prutscher v. Fidelity Intern. Bank*, 502 F. Supp. 535, 536 (S.D.N.Y. 1980) (same).[13]

## CONCLUSION

For the foregoing reasons, and for the reasons asserted in Capital One's Moving Brief, Capital One's motion to dismiss should be granted in all respects, and Taiwan's Counterclaim should be dismissed as to Capital One with prejudice.

Dated:  February 25, 2011

KING & SPALDING LLP

By: _____

Paul A. Straus
J. Emmett Murphy
Joshua Edgemon
Paul B. Maslo

1185 Avenue of the Americas
New York, NY  10036
Tel:  (212) 556-2100
Fax:  (212) 556-2222

Attorneys for Capital One, N.A.

---

[13] The remaining cases cited by Taiwan involve injunctive relief granted prior to payment. *See, e.g. Merchants Corp. of America v. Chase Manhattan Bank, N.A.*, 1968 WL 9180, at * 5 (N.Y.Sup., Mar 05, 1968) (enjoining bank (*prior to payment*); *Brenntag Int'l Chems., Inc. v. Norddeutsche Landesbank GZ*, 70 F. Supp. 2d 399 (S.D.N.Y. 1999) (enjoining holding bank from drawing on letter of credit); *United Bank, Ltd. v. Cambridge Sporting Goods Corp.*, 41 N.Y.2d 254, 360 N.E.2d 943, 1976 (1976) (after previously enjoining issuing bank from payment, court dismissed petition to obtain proceeds of drafts where holding bank found not holder in due course); *Scarsdale Nat'l Bank & Trust Co. v. Toronto-Dominion Bank*, 533 F. Supp. 378 (S.D.N.Y. 1982) (after issuing bank dishonored presentation, court dismissed petition to obtain proceeds of drafts where holding bank found not holder in due course and took drafts with knowledge of fraud).