UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

CVD EQUIPMENT CORP.,

                Plaintiff,

- against -

TAIWAN GLASS INDUSTRIAL CORP., et al.,

                Defendants.

10 Civ. 573 (RJH)

**MEMORANDUM OPINION AND ORDER**

Richard J. Holwell, District Judge:

      This case arises from a commercial transaction gone wrong. Before the Court now are motions that have little do with the merits of that dispute. Instead, the motions are between the parties to the central transaction and between the banks that were supposed to assure payment. CVD Equipment Co. ("CVD"), an American equipment manufacturing company, contracted to produce specialized equipment for Taiwan Glass Inc. ("Taiwan Glass"), a Taiwanese glass manufacturing company. In order to assure prompt and smooth payment, the parties agreed that CVD would be paid through a commercial letter of credit ("l/c") issued by Mizuho Corporate Bank ("Mizuho"). Similarly, in the event that Taiwan Glass required a refund, it would obtain that refund through a standby l/c issued by Capital One, N.A. ("Capital One").

1

After a dispute arose over alleged delays in shipment, CVD and Taiwan Glass attempted to draw on the l/cs, and both were denied. CVD brought suit against Taiwan Glass and Mizuho. Taiwan Glass impleaded Capital One. Before the Court now are motions between CVD and Mizuho and between Taiwan Glass and Capital One regarding non-payment of the l/cs. Mizuho moved for summary judgment against CVD on July 28, 2010, and CVD cross-moved for summary judgment on August 31, 2010. Capital One moved to dismiss Taiwan Glass's third party complaint on January 28, 2011, and Taiwan Glass cross-moved for summary judgment on the same day. For the reasons below, the Court grants Mizuho's motion for summary judgment; denies CVD's cross-motion for summary judgment; denies Capital One's motion to dismiss; and denies Taiwan Glass's cross-motion for summary judgment.

## BACKGROUND

The first l/c was issued in favor of CVD by Mizuho bank to insure payment for the machinery once it was shipped. (Huang Decl. July 26, 2010, Ex. A.) The l/c specified that in order to receive payment, CVD must make a presentation including, among other documents, "clean on board ocean bills of lading made out to order of Taiwan Glass . . . ." (*Id.*) The l/c also provided that the "documents must be presented within 20 days after the date of shipment but within l/c expiry date." (*Id.*) On December 4, 2009, CVD provided the documents to Capital One, which was acting as a nominating bank, and on December 7, 2009, Capital One forwarded the materials to Mizuho, the issuing bank. (*Id.*, Ex. C.) The documents were received by Mizuho on December 10, 2009. (*Id.*)

The presentation included a bill of lading prepared by Emo Trans. (*Id.*) The bill of lading listed Emo Trans as a "forwarding agent," and specified that the goods were destined for a particular ocean vessel. (*Id.*) It further specified that the port of loading was to be New York,

NY, and the port of discharge was to be Taichung, Taiwan.  (*Id.*)  The bill of lading contained a pre-printed statement as follows:  "Received by the Carrier in apparent good order and condition unless otherwise indicated hereon [sic] the Container(s) and/or good hereinafter mentioned to be transported and/or otherwise forwarded from the Place of Receipt to the intended Delivery upon and subject to all the terms and conditions appearing on the face and back of this Bill of Lading."  (*Id.*)

On December 17, 2009, Mizuho refused to honor the l/c.  (*Id.*, Ex. D.)  As grounds for refusal, Mizuho listed, among other things, that the bill of lading was non-conforming because the bill of lading was a "received b/l [bill of lading] without on board notation."  (*Id.*)  On December 24, 2009, Capital One forwarded a new presentation to Mizuho with a revised bill of lading.  (*Id.*, Ex. I.)  This bill of lading did contain an on board notation.  (*Id.*)  On December 29, 2009, Mizuho rejected this presentation because it was late.  (*Id.*, Ex. J.)

The second l/c was issued by Capital One in favor of Taiwan Glass.  (Taiwan Glass Countercl. Ex. C.)  This l/c in effect enabled Taiwan Glass to receive a refund if CVD did not meet its contractual obligations.  The l/c specified that Taiwan Glass could only draw on the l/c between January 1, 2010 and January 21, 2010.  (*Id.*)  It also provided, "This letter of credit will be canceled upon the earliest of: . . . (II) copy of an original bill of lading submitted by CVD Equipment Corporation issued to the order of Taiwan Glass . . . dated not later than November 30, 2009 and indicating CVD Equipment Corporation as shipper."  (*Id.*)

CVD sent a letter dated December 2, 2009 to Capital One attaching a bill of lading (the same bill of lading originally sent to Taiwan Glass) and requesting that Capital One cancel the l/c.  (Maslo Decl. Jan. 28, 2011, Exs. 2-3.)  On December 8, 2009, Capital One sent a notice to Mizuho as representative of Taiwan Glass, informing them that Capital One had canceled the l/c

3

because it had received a bill of lading from CVD.  (Tsai Decl. Jan. 28, 2011, Ex. 3.)  Mizuho disputed the cancellation.  (*Id*., Exs. 4, 6.)  On January 4, 2010, Taiwan Glass requested payment on the l/c.  (*Id*., Ex. 9.)  Capital One refused to honor the l/c on January 6, 2010, providing as a reason, "L/c expired.  Refer to our [message] dated 12/08/2009 acknowledged by you on 12/08/2009."  (*Id*., Ex. 10.)  Mizuho on behalf of Taiwan Glass disputed the dishonor on January 11, 2010.  (*Id*., Ex. 11.)  It argued that the original bill of lading was deficient because it did not contain an on board notation and that the second bill of lading was deficient because it argued that the shipping date stamped on the bill of lading did not match the vessel company's tracking records.  (*Id*.)

Both letters of credit at issue by their terms are governed by the most recent version of the Uniform Customs and Practices ("UCP").  The UCP are a standard set of rules that govern most letters of credit.  As the Second Circuit has recognized, the UCP, though not law, enjoy a unique, quasi-legal status.  *Id*.  They provide the commercial rules governing this transaction.

## STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact.  *See* Fed. R. Civ. P. 56(c).  The burden to show the absence of a genuine factual dispute falls on the moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  A dispute regarding a fact is genuine if the evidence is such that a reasonable finder of fact could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material when it "might affect the outcome of the suit under the governing law."  *Elec. Inspectors, Inc. v. Vill. of E. Hills*, 320 F.3d 110, 117 (2d Cir. 2003).  In evaluating a motion for summary judgment, the court is required to "view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and

to eschew credibility assessments . . . ." *Wevant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996) (citations omitted).

## DISCUSSION

Letters of credit provide a system of payment that is especially useful in international transactions. "The fundamental principle governing documentary letters of credit and the characteristic which gives them their international commercial utility and efficacy is that the obligation of the issuing bank to honor a draft on a credit when it is accompanied by documents which appear on their face to be in accordance with the terms and conditions of the credit is independent of the performance of the underlying contract for which the credit was issued." *Alaska Textile Co. v. Chase Manhattan Bank, N.A.*, 982 F.2d 813, 815 (2d Cir. 1992). "Because the credit engagement is concerned only with documents, the terms and conditions of a letter of credit must be strictly adhered to. There is no room for documents which are almost the same, or which will do just as well." *Id*. at 816. On the other hand, issuers "must swiftly and carefully examine documents submitted for payment; and they are estopped from complaining about discrepancies they did not assert promptly." *Id*.

The Court will examine the CVD-Mizuho l/c and the Taiwan Glass-Capital One l/c in turn, analyzing them in light of the UCP.

### I. The Mizuho Letter of Credit

Mizuho moves for summary judgment on the grounds that its dishonor of the l/c was proper. CVD argues that the dishonor was improper.

As an initial matter, CVD argues that regardless of the validity of Mizuho's dishonor, Mizuho was precluded from dishonoring because it did not respond to CVD's presentation in a timely fashion. Art. 14 of the UCP provides that a bank has five banking days after the

presentment to respond.  CVD argues that the five days that Mizuho had under Art. 14 of the UCP began to run not when Mizuho received the documents, but rather when CVD delivered them to Capital One.  This argument is without merit.  Article 14(b) states, "A nominated bank acting on its nomination, a confirming bank, if any, and the issuing bank shall *each* have a maximum of five banking days following the day of presentation to determine if a presentation is complying."  *Id*. (emphasis added).  The rule could not be more clear.  Mizuho had five banking days from the date that the documents were delivered to it (December 10, 2009) to examine the presentation.  It complied with this deadline by rejecting payment on December 17, 2009.

      Turning to Mizuho's grounds for dishonor, the Court finds that the original presentation made to Mizuho was non-conforming.  The l/c required that CVD present a "clean on board ocean bill of lading."  The bill of lading does not indicate that the shipment was placed on a ship, but rather that it was placed in the care of a freight company that would load the shipment onto a ship.  This is a "received bill of lading," not an "on board bill of lading."  Therefore, the bill of lading presented by CVD does not comply with this requirement.

      The requirement for an on board bill of lading is also proved by UCP Art. 20, which requires that a bill of lading "indicating that the goods have been shipped on board a named vessel at the port of loading stated in the credit by pre-printed wording or an on board notation indicating the date on which the goods have been shipped on board."  CVD contends that the date of the bill of lading should be construed as the date of shipment because Art. 20 also provides, "The date of issuance of the bill of lading will be deemed to be the date of shipment unless the bill of lading contains an on board notation indicating the date of shipment, in which case the date stated in the on board notation will be deemed to be the date of shipment."  This provision does not say what CVD claims it does.  It states that in situations where there is an on

6

board notation, but the on board notation is not accompanied by a specific date, the date of the bill of lading will be construed as the on board date.  It does not eliminate the need for an on board notation altogether.  The bill of lading CVD presented was thus non-conforming under the UCP as well.

Furthermore, the l/c specifically required that the bill of lading be a "clean on board" bill of lading.  The Second Circuit has recognized that "a 'clean' bill of lading refers to the undamaged condition of the cargo at the time it is received by the carrier." *Ingersoll Milling Machine Co. v. M/V Bodena*, 829 F.2d 293, 303 (2d Cir. 1987).  In requiring a "clean on board ocean bill of lading," the l/c required specific confirmation that the goods had been received on the ship in good condition.  The presented bill of lading simply does not provide that information.  As such, CVD's original presentment was not sufficient.

CVD later made a presentation that purported to cure the defects of the earlier presentment.  The presentation was delivered to Mizuho on December 28, 2009.  The letter of credit specified that any presentation was to be made within twenty days of the shipping date.  While the actual shipping date is in dispute, CVD alleges a shipping date of November 27, 2009.  Consequently, the new presentation was made outside the time provided in the l/c.  CVD has referenced no authority, either in the text of the l/c itself or in the case law, for the proposition that it could have additional time to cure defects after the original presentation was rejected.  In *Avery Dennison Corp. v. Home Trust & Sav. Bank*, the court held that a party making a presentment did not have the right to cure defects following the expiration of a letter of credit.  2003 U.S. Dist. LEXIS 20413, at *14 (N.D. Iowa Nov. 7, 2003).  The court noted that "permitting a beneficiary to enjoy an unrestricted right to cure deficiencies after the presentation deadline would render the expiry date virtually meaningless and would effectively subvert the

strict compliance standard." *Id*. This reasoning applies equally here. The Court holds that CVD's attempt to cure the deficiencies in its original presentation was not made in a timely fashion. Consequently, Mizuho's motion for summary judgment is GRANTED, and CVD's cross-motion is DENIED.

## II. The Capital One Letter of Credit

Taiwan Glass argues that Capital One's cancellation of its l/c in December 2009 and its refusal to pay Taiwan Glass in January 2010 was improper because the bill of lading that Capital One received from CVD was non-conforming. Since the bill of lading was not an on board bill, Taiwan Glass contends that Capital One was not permitted to cancel the l/c. Notably, the l/c issued by Capital One is not specific as to the type of bill of lading required for cancellation. It provides merely that "[t]his letter of credit will be canceled upon the earliest of . . . [sic] copy of an original bill of lading submitted by CVD . . . dated not later than November 30, 2009 and indicating CVD Equipment as the shipper."

While it initially contended (erroneously) that the bill of lading provided by CVD satisfied any on board requirement, Capital One argues now that the l/c cancellation provision has no on board requirement and that cancellation was therefore proper. But, as noted, the Capital One l/c explicitly provides that the UCP applies, and UCP Art. 20 requires that bills of lading be "on board." Nonetheless, Capital One claims that Art. 20 of the UCP does not apply to cancellations of l/cs, but merely to presentations for payment.

The Court finds Capital One's reasoning unpersuasive. Nothing in the text of the UCP limits the applicability of Art. 20 solely to presentations. Capital One relies upon a single sentence in the Commentaries, which states, "This article applies when the documentary credit requires presentation of a bill of lading covering transport by sea from one port to another."

Commentary on UCP 77. But the Commentary does not say that Art. 20 applies *only* to presentations. It is not inconsistent with the Commentary for Art. 20 to apply both to presentations and to cancellations. Furthermore, the Court notes that if Capital One's argument is correct, the result would be that it would essentially have no guidance as to what the Bill of Lading must contain. Theoretically, a document that merely contained the words "Bill of Lading" at the top would suffice. This result is unsatisfactory. The Court concludes that Art. 20 applies to cancellations and to presentation and that the original bill of lading Capital One received on December 2 when CVD requested that Capital One cancel the bill of lading was nonconforming. Therefore, Capital One's purported notice of cancellation on December 9 was wrongful.

Capital One argues that even if the original bill of lading was deficient, it had received a second, conforming on board bill of lading before Taiwan Glass attempted in early January to draw on the l/c, and that this bill of lading would have canceled the l/c even if the first was not sufficient. In Capital One's January 6, 2010 letter explaining that it was not honoring the l/c, it explained merely that the letter had been "canceled" and relied solely on the December 8, 2009 communication, which in turn relied upon the initial bill of lading for cancellation. Further, in a follow up communication on December 10, Capital One explained that this bill of lading did conform to Article 20. Taiwan Glass argues that Capital One is estopped from relying upon the second bill of lading because it did not rely on it until these court proceedings as a ground for cancellation. *See Alaska Textile Co.*, 982 F.2d at 816.

It is true that most courts have read the UCP as requiring that an issuing bank mention all existent grounds for refusal in its first notice of dishonor or else it waives them in subsequent notices of dishonor or litigation. For example, in *Kerr-McGee Chem Corp. v. Fed. Deposit Ins.*

9

*Corp.*, a bank dishonored a l/c twice for discrepancies in the presentation documents. 872 F.2d 971, 972 (8th Cir. 1989). Because the discrepancy in the second presentation could have been raised in the first notice of dishonor, the Eighth Circuit held that the bank's "failure to assert this defect at the first presentment precluded it from asserting it at a second." *Id.* at 974.

But this rule does not extend as far Taiwan Glass claims. Article 14(a) of the UCP provides, "[T]he issuing bank must examine a presentation to determine, *on the basis of the documents alone*, whether or not the documents appear on their face to constitute a complying presentation." UCP Art. 14(a) (emphasis added). "When . . . the issuing bank decides to refuse to honour or negotiate, it must give a single notice to that effect to the presenter. The notice must state: . . . each *discrepancy* in respect of which the bank refused to honour or negotiate . . . ." UCP Art. 16(c). The term "discrepancy" seems to refer to a difference between what the l/c or UCP require of a presentation and what the beneficiary provided, something like Mizuho's grounds for dishonoring the CVD l/c. Capital One did not dishonor because of a problem with the underlying documentation. Rather, it dishonored because the l/c itself had been canceled. As Judge Jones has recognized, estoppel applies where the bank must "notif[y] of *facial discrepancies* in presentation documents. In these cases, banks were found to have waived the discrepancies where they failed to notify properly under the UCP." *Todi Exps. v. Amrav Sportswear Inc.*, 1997 U.S. Dist. LEXIS 1425, at *19 (Feb. 10, 1997). However, "[i]n cases dealing with *timing* discrepancies—i.e. expired letters of credit—courts have refused to apply UCP estoppel in the face of such incurable defects." *Id.* at *19-20. It is true that expiration is not the same thing as cancellation. *See 3Com Corp. v. Banco Do Brasil, S.A.*, 171 F.3d 739, 746-47 (2d Cir. 1999). Nonetheless, both expiration and cancellation involve issues outside of the documents provided by the beneficiary that the beneficiary could not cure through further

documentation. They do not involve the sort of facial discrepancies covered by Art.16 but rather address the "underlying nullity" of an l/c. *Todi Exps.*, 1997 U.S. Dist. LEXIS 1425, at *19. In this case, the "strict preclusion" rule embodied in Art. 16 is not dispositive.

Taiwan Glass also argues that Capital One's cancellation was not effective because Taiwan Glass did not consent to it. As Taiwan Glass correctly points out, Art. 10(a) states, "[A] credit can neither be amended nor cancelled without the agreement of the issuing bank, the confirming bank, if any, and the beneficiary." Although Taiwan Glass did not consent to Capital One's cancellation in December 2009, it consented to a term that provided for the automatic cancellation of the l/c upon CVD's providing a conforming bill of lading to Capital One. The Court finds that this consent fulfills the requirement of Art. 10.

Finally, Taiwan Glass argues that Capital One wrongly canceled the l/c because CVD supplied it with an obviously fraudulent bill of lading. "Presentation of fraudulent documents to a bank by a beneficiary subverts not only the purposes which letters of credit are designed to serve in general, but also the entire transaction at hand in particular. Falsified documents are the same as no documents at all." *Voest-Alpine Int'l Corp. v. Chase Manhattan Bank, N.A.*, 707 F.2d 608, 686 (2d Cir. 1983). It is well established, of course, that "the issuing bank's duties are solely ministerial. . . . . [T]he underlying bank has no duty to investigate an alleged underlying fraud." *Cooperative Agricole Groupement de Producteurs Bovins de L'ouest v. Banesto Banking Corp.*, 1989 WL 82454, at *21 (S.D.N.Y. July 19, 1989). Nevertheless, banks must not accept document that are fraudulent on their face in deciding whether to honor a letter of credit. *Oei v. Citibank, N.A.*, 957 F. Supp. 492, 506 (S.D.N.Y. 1997). And an issuer must act in good faith whenever it refuses to refuse to honor a draft on a l/c. *First Commercial Bank v. Gotham Originals, Inc.* 64 N.Y.2d 287, 295 (1985). Taiwan Glass raises several inconsistencies that it

alleges rendered the second bill of lading fraudulent on its face and which, it contends, show a lack of good faith. For example, it argues that it would be impossible for a shipping company to pick up equipment from Long Island, drive them to the port at New York City, then load them on board the ship all in one day. From this proposition, Taiwan Glass alleges that Capital One must have known that the second bill of lading was fraudulent. Similarly, differences in the stamp and signature on the bill of lading could possibly support an inference of knowledge of fraud. While Taiwan Glass's allegations are sufficient to survive Capital One's motion to dismiss, they obviously raise issues of fact that defeat its motion for summary judgment. As such, both Taiwan Glass and Capital One's motions are DENIED.

## CONCLUSION

For the foregoing reasons, Mizuho's motion for summary judgment [26] is GRANTED; CVD's cross-motion for summary judgment [33] is DENIED. Capital One's motion to dismiss [60] is DENIED; and Taiwan Glass's cross-motion for summary judgment [64] is DENIED.

**SO ORDERED.**

Dated: New York, New York

March 31, 2011

Richard J. Holwell

United States District Judge