UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                               :

CVD EQUIPMENT CORPORATION,        :
                     Plaintiff,   :
                                      :         10 Civ. 573 (JPO)
        -v-                    :
                                      :         <u>OPINION AND ORDER</u>
TAIWAN INDUSTRIAL GLASS           :
CORPORATION, and MIZUHO CORPORATE  :
BANK, LTD.,                                :
                     Defendants.  :
                                        :
--------------------------------------------------------------- X

[USDC SDNY DOCUMENT ELECTRONICALLY FILED DOC #:_____ DATE FILED: 2/19/2014]

J. PAUL OETKEN, District Judge:

       This is a case about letters of credit and a commercial transaction gone awry. Before the Court is a motion for summary judgment filed by Capital One, N.A. ("Capital One") on a counterclaim by Taiwan Industrial Glass Corporation ("Taiwan Glass") for wrongful dishonor of a letter of credit. For the reasons that follow, the motion is denied.

**I.    Background**

    **A.    Factual Background**

       The following facts are taken from the parties' Local Civil Rule 56.1 statements and the submissions made in connection with the instant motion. They are undisputed unless otherwise indicated.

       On August 29, 2008, CVD Equipment Corporation ("CVD") and Taiwan Glass entered into an agreement for CVD to produce specialized glass-treatment equipment for Taiwan Glass's assembly line ("Agreement"). In connection with the Agreement, Capital One issued a $3.5 million standby letter of credit ("Capital One l/c" or "the l/c") addressed to Taiwan Glass's bank, Mizuho Corporate Bank, Ltd. ("Mizuho"), which secured Taiwan Glass's ability to obtain a refund of its down payment to CVD in the event that CVD breached its obligations under the

1

Agreement. Under the terms of the l/c, the earliest that Taiwan Glass could make a presentation for payment was after January 1, 2010. The l/c contained the following cancellation clause:

> This letter of credit will be cancelled upon . . . copy of an original bill of lading submitted by CVD Equipment Corporation issued to the order of Taiwan Glass Ind. Corp. . . . *dated not later than November 30, 2009* and indicating CVD Equipment Corporation as Shipper.

(Dkt. No. 133 ("Kurian Decl."), Ex. A at TG00143 (Dkt. No. 133) (emphasis added).)[1] Mizuho also issued a letter of credit addressed to Capital One, which secured CVD's ability to secure payment in the event that Taiwan Glass breached the Agreement ("Mizuho l/c"). However, unlike the Capital One l/c, the Mizuho l/c expressly called for a "clean on board ocean bill of lading" dated no later than November 30, 2009. (Dkt. No. 138 ("Chen Decl."), Ex. 1 at CO00040.) In other words, it required a bill of lading indicating that the equipment was loaded on board the vessel on the date stamped.

On November 27, 2009, a trucking firm sent by EMO TRANS, Inc. ("EMO TRANS") picked up three containers of the CVD equipment from Long Island for delivery to a Staten Island port and shipment to Taiwan. EMO TRANS provided CVD with a bill of lading for the cargo dated November 27, 2009. (Chen Decl., Ex. 8 ("First B/L").) This bill of lading did not have an on board notation and, in actuality, two of the containers did not arrive at the Staten Island port until December 1, and all three were not loaded on the vessel for shipment until December 5.

In a letter dated December 2, CVD asked Capital One to cancel the Capital One l/c based upon the attached First B/L. On December 8, Capital One notified Mizuho that it had cancelled the l/c based upon the First B/L. Mizuho replied the next day, expressing its disagreement with cancellation because, *inter alia*, the bill of lading did not have an on board notation, and it had

---

[1] A bill of lading is essentially a contract between the shipper and carrier.

"checked with [the] shipping company and [had] evidence showing that the goods [were] not loaded on board before Nov 30, 2009 and the vessel departed Dec 06, 2009 . . . ." (Kurian Decl., Ex. E).[2] Capital One responded the next day, asserting that under Article 20 of the ICC Uniform Customs and Practice for Documentary Credits ("UCP"), the bill of lading was ground for cancellation notwithstanding the absence of an on board notation, and, in accordance with UCP Article 5, its "determination [that the goods were timely shipped] was made based on the strength of the bill of lading presented and not on the disposition of the merchandise." (*Id.*, Ex. F.) Mizuho again stated its disagreement on December 14, contending that Article 20 required "evidence of the date the goods were shipped on board," and reiterating that the carrier indicated the on board date to be December 5.

During November and early December, Karen Hamberg of CVD had been in contact with Kurian Kurian of Capital One to obtain advice regarding preparation of the bill of lading for CVD's shipment to Taiwan Glass, as well as other documents submitted to Mizuho in connection with the presentation for payment under the Mizuho l/c. Ms. Hamberg was also in contact with Anna Guzman of EMO TRANS because she believed that she needed an ocean bill of lading for the presentation of payment under the Mizuho l/c. (*See* Chen Decl., Ex. 13.) On December 3, Ms. Guzman sent Ms. Hamberg an email with the ocean bill of lading attached, which indicated that the cargo had been received at the Staten Island port on December 1 and was expected to be "laden on board" on December 5. (*Id.*, Ex. 15 ("Ocean B/L").)[3] The next day, Ms. Hamberg emailed Mr. Kurian, stating:

---

[2] Where cited materials are written entirely in capital letters, the Court quotes them in traditional form.

[3] Ms. Guzman had received this bill of lading from the carrier, Overseas Orient Container Line ("OOCL").

> As per our conversation, I have edited the commercial invoice and
> attached it.  Please confirm that the wording is as you requested.
> . . .
>
> As you stated, we will not include the copy of the ocean BOL
> received yesterday when I return the documents.  I will send back
> the original two sets from the freight forwarder [EMO TRANS].

(*Id.*, Ex. 16 ("Dec. 4 email") at CO00376.)

Capital One subsequently made a presentation for payment under the Mizuho l/c based upon the First B/L, which had no on board notation, rather than the Ocean B/L, which had an on board notation of December 5.  Mizuho refused this presentation on December 17 because the First B/L did not have an on board notation.  Leonard Rosenbaum, President of CVD, subsequently spoke to Mr. Kurian about the rejection, and Mr. Kurian informed him that the Mizuho l/c required an on board notation.  On December 23, Glen Charles of CVD emailed Mr. Kurian a draft of the second bill of lading with a November 27 on board notation and a note to "[p]lease call to discuss."  (Chen Decl., Ex. 30 ("Second B/L") at CVD35829.)[4]  On December 24, Capital One informed Mizuho that it disagreed with its December 17 rejection and, per CVD's request, was forwarding the Second B/L.

On January 4, 2010, Taiwan Glass made a presentation for payment under the Capital One l/c.  The presentation documents included, among other things, a beneficiary statement certifying that CVD had defaulted under the Agreement, as well as a cargo tracking record from the carrier indicating that the cargo had been shipped on January 5.  (*Id.*, Ex. H.)  Capital One replied on January 6, stating that the l/c had been cancelled per its December 8 correspondence, and that the beneficiary certificate was not in the form required under the l/c.  Taiwan Glass made another presentation for payment on January 11, this time with conforming language in the

---

[4] Mr. Charles testified that they subsequently discussed the meaning of the on board notation—that the merchandise was now on the ship—but they did not discuss the November 27 date or what it signified.  (Chen Decl., Ex. D at 43-46.)

beneficiary statement.  On January 14, Capital One again refused payment on the basis that the l/c had been cancelled.  With regard to the cargo tracking record and other materials, Capital One stated: "You have opted to present additional documents not called for in our standby letter of credit and we are exercising our rights as supported by [UCP] Article 14G in disregarding said documents."  (*Id.*, Ex. K.)

### B.      Procedural Background

CVD initiated this action against Taiwan Glass and Mizuho on January 26, 2010, asserting claims for breach of contract and wrongful dishonor, respectively.  (Dkt. No. 1.)  Mizuho moved for summary judgment against CVD on July 28, 2010.  (Dkt. No. 26.)  On August 31, 2010, Taiwan Glass amended its answer to add a wrongful dishonor counterclaim against Capital One, and CVD cross-moved for summary judgment against Mizuho.  (Dkt. Nos. 32 & 33.)  On January 28, 2011, Capital One moved to dismiss Taiwan Glass's counterclaim, and Taiwan Glass moved for summary judgment on the same.  (Dkt. Nos. 60 & 64.)

In a decision dated March 31, 2011, Judge Holwell (to whom this case was previously assigned) granted Mizuho's motion for summary judgment and denied CVD's cross-motion. *CVD Equip. Corp. v. Taiwan Glass Indus. Corp.*, No. 10 Civ. 573 (RJH), 2011 WL 1210199, at *4 (S.D.N.Y. Mar. 31, 2011).  With respect to Taiwan Glass's motion for summary judgment on its counterclaim and Capital One's motion to dismiss, he made three relevant legal conclusions.  First, he determined that it was improper for Capital One to rely upon the First B/L to cancel the l/c in December 2009 because under the UCP, applicable to the l/c, a bill of lading must have an on board notation to provide a basis for cancellation.  *Id.* at *4-5.  Second, he concluded that Capital One was not estopped under the UCP from relying upon the Second B/L as a basis for cancellation of the l/c, even though it relied only upon the First B/L prior to litigation.  *Id.* at *5.  Finally, he considered Taiwan Glass's argument that Capital One could not rely upon the Second

5

B/L because it was "obviously fraudulent" based upon purported inconsistencies, including the alleged impossibility of picking up equipment on Long Island and loading it onto a ship in Staten Island on the same day, as well as differences in the stamps and signatures.  He observed that while "an issuing bank's duties are solely ministerial" and do not include a duty to investigate alleged underlying fraud, the issuer also "must not accept document[s] that are fraudulent on their face in deciding whether to honor a letter of credit" and "must act in good faith . . . ." *Id.* at *6.  Because Taiwan Glass's allegations raised genuine issues of fact as to whether Capital One had acted in bad faith, neither summary judgment nor dismissal was appropriate. *Id.*

On April 12, 2012, Taiwan Glass moved for partial summary judgment on the issue whether the Mizuho l/c—specifically its deadline for shipment—was incorporated into the Agreement.  (Dkt. No. 96.)  In a decision dated November 7, 2012, the Court denied the motion. *CVD Equip. Corp. v. Taiwan Glass Indus. Corp.*, No. 10 Civ. 573 (JPO), 2012 WL 5506120 (S.D.N.Y. Nov. 7, 2012).  Capital One filed the instant motion for summary judgment on July 12, 2013.  (Dkt. No. 130.)  Taiwan Glass opposed on August 9, and Capital One replied on September 4.  (Dkt. Nos. 139 & 142.)

**II.     Legal Standard**

Summary judgment is appropriate when there is "no genuine issue as to the evidentiary facts [or] . . . regarding the inferences to be drawn from them," and the movant is therefore "entitled to judgment as a matter of law." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 56 (2d Cir. 2000) (citations and quotation marks omitted).  A fact is material if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

If the non-moving party bears the burden of proof at trial, it also bears the burden on a motion for summary judgment of initially pointing to evidence sufficient to prove each element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[T]he court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party," and "[a]ny assessments of credibility and all choices between available inferences are matters to be left for a jury . . . ." *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 517 (2d Cir. 1994) (citations omitted).

## III.   Discussion

A fundamental principle underlying the system of letters of credit is that "all parties to a letter of credit transaction deal in documents rather than with the facts the documents purport to reflect." *First Comm. Bank v. Gotham Originals, Inc.*, 64 N.Y.2d 287, 294-95 (1985) (internal citations, brackets, and quotation marks omitted). Consequently, when a beneficiary makes a presentation for payment under a letter of credit, the issuing bank is not required to make factual determinations beyond whether the requisite documents are conforming, nor is it required to investigate any alleged underlying fraud. *See, e.g.*, *Cooperative Agricole Groupement De Producteurs Bovins De L'Ouest v. Banesto Banking Corp.*, No. 86 Civ. 8921 (PKL), 1989 WL 82454, at *21 (S.D.N.Y. July 19, 1989); *see also Bank of Cochin Ltd. v. Mfrs. Hanover Trust Co.*, 612 F. Supp. 1533, 1537 (S.D.N.Y. 1985) (stating that the issuing bank is "concerned exclusively with the documents, not the performance obligations created by the customer-beneficiary contract"). This rule is reflected in N.Y.U.C.C. § 5-109, which provides that an issuer "acting in good faith may honor or dishonor [a] presentation" if it "appears on its face strictly to comply with the terms and conditions of the letter of credit," even if "a required document is [in fact] forged or materially fraudulent." Relatedly, pursuant to UCP Article 14(g), "[a] document presented but not required by the letter of credit will be disregarded and may be returned to the presenter."

This approach makes sense. "It is the complete separation between the underlying commercial transaction and the letter of credit that gives the letter its utility in financial transactions." *Banesto*, 1989 WL 82454, at *20. Were issuers instead required to investigate factors beyond the face of the documents called for by the letter of credit, the "certainty essential to the utility of letters of credit would be seriously compromised . . . ." *Banque Worms, New York Branch v. Banque Commerciale Privee*, 679 F. Supp. 1173, 1180 (S.D.N.Y. 1988). Forced to quickly decide between competing claims, issuers would almost certainly face litigation from the loser of their determination. No commercially reasonable fee could justify assuming such a risk. At the same time, the utility of letters of credit would be equally compromised if beneficiaries could not count upon the fairness of issuers. Thus, if an issuer acts in bad faith in dishonoring a presentation for payment, it is subject to a claim for wrongful dishonor.

To determine whether an issuing bank acted in bad faith, courts employ a subjective test which focuses on "what [the issuer] itself actually knew," rather than what a reasonable issuer in its position would know or might have inquired. *Chem. Bank of Rochester v. Haskell*, 51 N.Y.2d 85, 92 (1980). If the issuer does not have actual knowledge of fraud in determining that the bill of lading meets the requirements of the letter of credit, then it has complied with the good faith requirement. *See, e.g.*, *Phillip A. Feinberg, Inc. v. Varig, S.A.*, 363 N.Y.S.2d 195, 199 (Sup. Ct. N.Y. 1974).

In the instant case, genuine issues of material fact exist as to whether Capital One acted in bad faith in dishonoring Taiwan Glass's presentation for payment. Two evidentiary bases, in particular, give rise to a plausible inference that Capital One actually knew when it received the Second B/L that the November 27, 2009 on board notation was false.

First, it is clear from the emails between Ms. Hamberg at CVD and Ms. Guzman at EMO TRANS that Ms. Hamberg believed that the First B/L was insufficient for the presentation for

payment under the Mizuho l/c because it lacked an on board notation.  After receiving the Ocean B/L from Ms. Guzman on December 3, which had a cargo received date of December 1 and estimated ship date of December 5, Ms. Hamberg emailed Mr. Kurian of Capital One on December 4 seeking advice for the presentation for payment under the Mizuho l/c.  Of particular relevance is Ms. Hamberg's statement that "[a]s you stated, we will not include the copy of the ocean BOL received yesterday when I return the documents." (Dec. 4 email at CO00376.)  This indicates that Ms. Hamberg and Mr. Kurian spoke about the Ocean B/L and that he told her not to use it for the presentation for payment under the Mizuho l/c.  The question is why.  Taiwan Glass's plausible answer is that Mr. Kurian was aware of the Ocean B/L's December 1 date, knew that it would not satisfy the Mizuho l/c's requirement that the bill of lading have an on board notation of on or before November 30, and therefore instructed Ms. Hamberg to use the First B/L.  If this were true, then on December 4, Mr. Kurian knew *based upon the document alone* that the shipment had not been made on November 30, and consequently knew when he received the Second B/L on December 24 that the November 27 on board notation was false.  Notably, Mr. Kurian and Ms. Hamberg both testified that they recalled the existence of these communications, but denied any substantial recollection of their details; Ms. Hamberg could not even recall why she wanted an ocean bill of lading.  A reasonable jury could discredit this testimony and draw the aforementioned inferences instead.

Second, it is undisputed that Mr. Rosenbaum and Mr. Kurian discussed Mizuho's December 17 rejection and the need for the bill of lading to have an on board notation.[5]  Taiwan

---

[5] Although it is not apparent from the record when this conversation took place, it is reasonable to assume that it occurred before Capital One received the Second B/L from CVD and forwarded it to Mizuho on December 24.  Had the Second B/L already been sent to Mizuho, it is unclear why Mr. Rosenbaum would need to ask Mr. Kurian whether the bill of lading needed an on board notation—it already had one.

Glass argues that a jury could reasonably infer that the two discussed not only the need for an on board notation, but also the shipment date itself.  If this were true, then Mr. Kurian knew on or before December 24 that the November 27 on board notation on the Second B/L was false.  Although this conversation provides a weaker basis for inferring bad faith than the December 4 email between Ms. Hamberg and Mr. Kurian, the Court agrees that a reasonable jury could draw this inference.  Moreover, a jury could reasonably rely upon this conversation and the December 4 email in tandem to discredit the testimony of Ms. Hamberg and Mr. Kurian and conclude that Mr. Kurian actually knew the Second B/L's on board notation was false.  Specifically, a jury could conclude that Mr. Kurian—a man with over thirty years of experience dealing with letters of credit—not only "knew" that an on board notation was needed for the Mizuho l/c presentation when he spoke to Mr. Rosenbaum, but also knew this fact on December 4 when he discussed the Ocean B/L with Ms. Hamberg.[6]

      Capital One's counterargument to this evidence is, essentially, that these inferences are purely speculative and implausible.  In support, it cites this Court's decisions in *de Abreu v. Bank of America Corp.*, 812 F. Supp. 2d 316 (S.D.N.Y. 2011), and *Oei v. Citibank, N.A.*, 957 F. Supp. 492 (S.D.N.Y. 1997).  Both cases are distinguishable.  In *de Abreu*, the Court granted summary judgment in favor of Bank of America on the plaintiff's aiding and abetting fraud claim because "[e]ven if a fact finder were to conclude that [Bank of America's] knowledge of [certain] transactions amounted to 'notice of red flags,' that Bank of Europe was engaging in fraudulent activity, such notice would not be sufficient to support an allegation of actual knowledge."  812 F. Supp. 2d 316, 324-25 (S.D.N.Y. 2011).  However, the Court expressly noted that aiding and

---

[6] Taiwan Glass offers a number of additional arguments based upon other evidence, such as the December 23 conversation between Mr. Charles and Mr. Kurian.  The Court does not find it necessary to rely upon such evidence in making its determination.

abetting fraud must be proven by clear and convincing evidence, which is not the relevant standard here.  *Id.* at 322.  Moreover, the evidence here raises more than mere red flags, because a jury could reasonably infer that Capital One *actually knew* that the Second B/L was fraudulent, not just that it knew of red flags that would cause a reasonable issuer to question the Second B/L or investigate potential fraud.  In *Oei*, the Court declined to dismiss a wrongful dishonor claim on summary judgment because there were some seventeen discrepancies between multiple presentations, including that two bills of lading flatly contradicted one another, with one reporting transportation by sea and the other reporting transportation by land.  957 F. Supp. at 502-09.  Capital One's argument from *Oei* appears to be that there are far fewer discrepancies here, so summary judgment is appropriate.  The Court disagrees.  On the contrary, *Oei* militates against summary judgment because the Ocean B/L and the Second B/L contradicted one another on the only issue that matters—the on board date.

**IV.     Conclusion**

For the foregoing reasons, Capital One's motion for summary judgment is DENIED.

The parties are directed to submit letters by March 12, 2014 addressing proposals for the remaining phase of this case, including (1) whether the parties consent to trial before Magistrate Judge Ellis, (2) proposed dates and estimated length of time for trial, and (3) any proposals for settlement discussions (e.g., mediation, settlement conference before Magistrate Judge).

The Clerk of Court is directed to terminate the motion at docket number 130.

Dated: New York, New York
       February 19, 2014

 _____
                J. PAUL OETKEN
            United States District Judge